# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-01153 -PAB-KLM

MELISSA YOUNG, individually and on behalf
of all others similarly situated,

    Plaintiff

v.

FRONTIER AIRLINES, INC.,

    Defendant.

---

**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT & JURY DEMAND**

---

    Plaintiff Melissa Young ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following on the investigation of her counsel and upon information and belief, except as to Plaintiff's allegations regarding her own actions which are based on personal knowledge.

**NATURE OF THE ACTION**

    1.    This is a class action lawsuit regarding Defendant Frontier Airlines, Inc.'s ("Frontier" or "Defendant") failure to provide full refunds to customers whose flights were cancelled as a result of the coronavirus, or COVID-19.

    2.    Given the outbreak of the coronavirus, Defendant has cancelled a vast percentage of their international and United States flights. However, Defendant has, to date, refused to issue refunds for flights that Defendant cancelled.

    3.    The United States Department of Transportation ("DOT") has "issued an Enforcement Notice clarifying, in the context of the 2019 Novel Coronavirus (COVID-19)

1

public health emergency, that U.S. and foreign airlines **<u>remain obligated to provide a prompt refund to passengers</u>** for flights to, within, or from the United States when the carrier cancels the passenger's scheduled flight or makes a significant schedule change and the passenger chooses not to accept the alternative offered by the carrier. The obligation of airlines to provide refunds, including the ticket price and any optional fee charged for services a passenger is unable to use, does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions)."[1] Indeed, the DOT's Enforcement Notice makes perfectly clear that offering "vouchers or credits for future travel" is not an adequate or appropriate substitute for airlines' obligations to offer refunds for cancelled flights.[2]

    4.  On May 12, 2020, the DOT issued a Second Enforcement Notice, which stated the following:

> (a)  The DOT reiterated that "airlines have an obligation to provide a refund to a ticketed passenger when the carrier cancels or significantly changes the passenger's flight, and the passenger chooses not to accept an alternative offered by the carrier."[3]

---

[1] DEP'T OF TRANSP., U.S DEPARTMENT OF TRANSPORTATION ISSUES ENFORCEMENT NOTICE CLARIFYING AIR CARRIER REFUND REQUIREMENTS, GIVEN THE IMPACT OF COVID-19 (Apr. 3, 2020), https://www.transportation.gov/briefing-room/us-department-transportation-issues-enforcement-notice-clarifying-air-carrier-refund (last accessed Apr. 10, 2020) (hereinafter "DOT NOTICE") (emphasis added).

[2] *See id.*

[3] DEP'T OF TRANSP., FREQUENTLY ASKED QUESTIONS REGARDING AIRLINE TICKET REFUNDS GIVEN THE UNPRECEDENTED IMPACT OF THE COVID-19 PUBLIC HEALTH EMERGENCY ON AIR TRAVEL 1 (May 12, 2020), https://www.transportation.gov/sites/dot.gov/files/2020-05/Refunds-%20Second%20Enforcement%20Notice%20FINAL%20%28May%2012%202020%29.pdf (last accessed June 24, 2020) (hereinafter "DOT SECOND NOTICE").

(b) Online travel agencies are required to provide a "prompt refund" when "(i) an airline cancels or significantly changes a flight, (ii) an airline acknowledges that a consumer is entitled to a refund, and (iii) passenger funds are possessed by a ticket agent."[4]

(c) "The refund policy in place at the time the passenger purchased the ticket is the policy that is applicable to that ticket."[5]

(d) "Airlines and ticket agents can offer consumers alternatives to a refund, such as credits or vouchers, **so long as the option of a refund is also offered and clearly disclosed** if the passenger is entitled to a refund."[6]

(e) "For airlines, 'prompt' is defined as being **within 7 business days** if a passenger paid by credit card, and **within 20 days** if a passenger paid by cash or check."[7]

5. Frontier is a low-cost airline and among the largest airlines in the United States. In 2019, Frontier carried over 21 million passengers.[8] Frontier's business was disrupted as a result of government-mandated restrictions on travel in response to the coronavirus.[9]

---

[4] *Id.* at 2.

[5] *Id.*

[6] *Id.* at 3 (emphasis added).

[7] *Id.* (emphasis added).

[8] DEP'T OF TRANSP., FRONTIER AIRLINES TRANSPORTATION STATISTICS, https://www.transtats.bts.gov/carriers.asp?Carrier=F9 (last accessed June 25, 2020).

[9] Susan Glaser, *Frontier Airlines Cuts 90% of Capacity, Flying Only to Orlando from Cleveland Hopkins in April*, CLEVELAND.COM, Apr. 1, 2020, https://www.cleveland.com/business/2020/04/frontier-airlines-cuts-90-of-capacity-flying-only-to-orlando-from-cleveland-hopkins-in-april.html (last accessed June 25, 2020).

6. Defendant Frontier announced in April 2020 that it is "cutting more than 90% of flight capacity nationwide in April" and expects to only "be in a position to gradually build flight capacity back up to as much as 35% in May."[10]

7. Plaintiff, like many other travelers, was scheduled to fly with Frontier on a round-trip between Myrtle Beach, South Carolina, and New York, New York.

8. Plaintiff's flight was cancelled by Frontier due to the coronavirus travel restrictions.

9. After receiving the cancellation e-mail, Plaintiff immediately requested a cash refund from Frontier. A Frontier customer service representative informed Plaintiff that she would receive said refund. However, the refund never came.

10. After waiting two weeks, Plaintiff called Frontier to check on the status of her refund. A Frontier customer service representative told her that Plaintiff was never promised a cash refund and would only be receiving a travel voucher.

11. Frontier was required by the DOT Enforcement Notice to provide Plaintiff a prompt refund when Frontier cancelled her flight.

12. Frontier also represents in its Contract of Carriage, attached as **Exhibit A**, that "In the occurrence of a force majeure event, Frontier may cancel, divert, or delay any flight without liability **except to provide a refund for the unused portion of the ticket**."[11]

---

[10] *Id.*

[11] FRONTIER CONTRACT OF CARRIAGE § 18.B, https://www.flyfrontier.com/legal/contract-of-carriage/ (last accessed June 25, 2020) (emphasis added).

4

13. The Contract of Carriage likewise states that "[i]f no portion of the ticket has been used, the refund amount will be equal to the fare, plus any ancillary purchases … and all charges, taxes and fees paid for the ticket issued to the passenger."[12] The refund "will be provided only to the original purchaser's form of payment,"[13] and "[a]ll refunds will be subject to government laws, rules, regulations, or orders of the country in which the ticket was originally purchased."[14]

14. Plaintiff requested a refund from Frontier, which never came. Further, upon information and belief, Plaintiff would not have been able to get a cash refund, as Frontier is only offering credits.

15. Frontier's acts are in violation of the DOT's Enforcement Notice, which requires airlines to provide "a prompt refund to passengers . . . when their carrier cancels the passenger's scheduled flight."[15] The DOT Enforcement Notice applies to "U.S. and foreign airlines."[16] And Frontier's Contract of Carriage is explicitly "subject to government laws, rules, regulations, or orders of the country in which the ticket was originally purchased."[17]

16. Frontier's consumers have excoriated Frontier's refusal or failure to provide its customers with refunds. For instance, like Plaintiff, customers on the website tripadvisor.com[18] have stated:

---

[12] FRONTIER CONTRACT OF CARRIAGE § 20.A.4.

[13] FRONTIER CONTRACT OF CARRIAGE § 20.B.3.

[14] FRONTIER CONTRACT OF CARRIAGE § 20.A.1.

[15] DOT NOTICE

[16] *Id*.

[17] FRONTIER CONTRACT OF CARRIAGE § 20.A.1.

[18] FRONTIER REVIEWS, TRIPADVISOR, https://www.tripadvisor.com/Airline_Review-d8729213-Reviews-Frontier-Airlines.html#REVIEWS (last accessed June 25, 2020).

June 24, 2020 Review:



June 23, 2020 Review:



June 20, 2020 Review:



6

June 15, 2020 Review:



June 9, 2020 Review:



June 8, 2020 Review:



7

June 5, 2020 Review



June 2, 2020 Review:



May 2020 Review:



8

May 2020 Review:



April 20, 2020 Review:



April 17, 2020 Review:



9

April 17, 2020 Review:



April 16, 2020 Review:



April 16, 2020 Review:



10

April 16, 2020 Review:



April 14, 2020 Review:



April 12, 2020 Review:



April 11, 2020 Review:



April 9, 2020 Review:



April 7, 2020 Review:



April 5, 2020 Review:



March 2020 Review:



17.     Plaintiff brings this action on behalf of herself and the Class for equitable relief and to recover damages and restitution for: (i) breach of contract.

## PARTIES

18.     Plaintiff Melissa Young is a citizen of the State of South Carolina and resides in Myrtle Beach, South Carolina.  In March 2020, Plaintiff purchased tickets directly from Frontier

13

for a round-trip flight between Myrtle Beach, South Carolina, and Long Island, New York. Plaintiff was to depart for New York on May 19, 2020, and to return to South Carolina on May 24, 2020. Plaintiff was to fly with her husband and son and paid a total price of approximately $254.00 for both flights. However, the flight was cancelled by Frontier on March 19, 2020 due to the coronavirus, COVID-19. In the cancellation e-mail to Plaintiff, Frontier did not give Plaintiff the option to request a cash refund. Instead, Frontier only gave Plaintiff the option to change her flight or receive a travel voucher. On March 19, 2020, Plaintiff called Frontier to request a cash refund, and was informed she would receive a cash refund. However, the refund never came. After two weeks, Plaintiff again called Frontier to check on the status of her refund. This time though, she was told she was never offered a cash refund, nor would she be offered a cash refund, and could only receive a travel voucher. To this date, Plaintiff has not received a refund from Frontier.

19. Defendant Frontier Airlines, Inc. is a corporation organized under the laws of the State of Colorado with a principal place of business at 4545 Airport Way, Denver, Colorado 80239. Defendant Frontier conducts substantial business throughout the United States, including in the State of New York.

**JURISDICTION AND VENUE**

20. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

14

21. This Court has personal jurisdiction over this action because Defendant maintains its principal place of business in this District.

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant maintains its principal place of business in this District.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, on behalf of the following Class:

> All persons in the United States who purchased tickets for travel on a Frontier flight scheduled to operate to, from, or within the United States whose flights were cancelled or were subject to a significant schedule change and not refunded.

24. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment to the complaint or narrowed at class certification.

25. Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

26. **Numerosity.** The members of the proposed Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of individuals that are members of the proposed Class. Although the precise number of proposed

15

members is unknown to Plaintiff, the true number of members of the Class is known by Defendant. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

27. **Typicality.** The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all members of the Class, paid for a Frontier flight that was cancelled, and did not receive a refund for the cancelled flight or for any consequential damages and cancelations caused by the original cancelled flight. The representative Plaintiff, like all members of the Class, has been damaged by Defendant's misconduct in the very same way as the members of the Class. Further, the factual bases of Defendant's misconduct are common to all members of the Class and represent a common thread of misconduct resulting in injury to all members of the Class.

28. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions include, but are not limited to, the following:

    (a)    Whether Frontier failed to refund purchasers of cancelled flights and the consequential damages caused thereby;

    (b)    Whether Frontier's actions violated its Contract of Carriage and the DOT Enforcement Notice; and

    (c)    Whether Plaintiff and the Class are entitled to damages or other relief.

29. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel who are highly experienced in complex

consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that are antagonistic to those of the Class.

30. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by members of the Class is relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for members of the Class, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if members of the Class could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

31. In the alternative, the Class may also be certified because:

    (a) the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class that would establish incompatible standards of conduct for the Defendant;

    (b) the prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

    (c) Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final

17

declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## CAUSES OF ACTION

### COUNT I
**Breach of Contract**

32. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

33. Plaintiff brings this claim on behalf of herself and members of the Class.

34. Defendant entered into contracts with Plaintiff and members of the Class to provide services in the form of flights in exchange for a set amount of money.

35. Defendant has breached these contracts by retaining Plaintiff and Class members' ticket prices while not providing flight services.

36. Plaintiff and members of the Class have suffered an injury through the payment of money for tickets while not receiving services in return.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of the alleged Class, that the Court enter judgment in their favor and against Defendant as follows:

(a) An Order certifying the proposed Class and appointing Plaintiff and her Counsel to represent the Class;

(b) An Order requiring Defendant to immediately issue refunds to Plaintiff and members of the Class for the cost of cancelled tickets, any cancellation fees, and consequential damages resulting therefrom;

(c) An Order of disgorgement of wrongfully obtained profits;

(d) An award of compensatory damages in an amount to be determined;

(e) An award of reasonable attorneys' fees costs and litigation expenses, as allowable by law;

(f) Interest on all amounts awarded, as allowed by law; and

(g) Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: June 26, 2020

 /s/ Yeremey O. Krivoshey
**Yeremey O. Krivoshey**
Bursor & Fisher, P.A.
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ykrivoshey@bursor.com

**Scott A. Kamber** (CO Bar # 51857)
**Michael Aschenbrener** (CO Bar #51687)
KamberLaw, LLC
201 Milwaukee Street, Suite 200
Denver, Colorado 80206
Telephone: (212) 920-3072
Email: skamber@kamberlaw.com
        masch@kamberlaw.com

**Andrew J. Obergfell** (*Admission Forthcoming*)
**Max S. Roberts**
Bursor & Fisher, P.A.
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aobergfell@bursor.com
        mroberts@bursor.com

*Attorneys for Plaintiff*