# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.

NELCY ALEXA RIVERA-DE LEON, PIOTR TCHORZEWSKI,
and STEPHANIE MUTERS, individually and on behalf of all
others similarly situated,

     Plaintiffs,

v.

FRONTIER AIRLINES, INC.,

     Defendants.

---

## CLASS ACTION COMPLAINT

---

Plaintiffs Nelcy Alexa Rivera-De Leon, Piotr Tchorzewski, and Stephanie Muters (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant Frontier Airlines, Inc. (collectively, "Defendant" or "Frontier"), by and through their attorneys, and allege as follows based on information and belief, except as to allegations specifically pertaining to Plaintiffs, which are made upon personal knowledge:

### <u>INTRODUCTION</u>

1.     America is at war with an invisible enemy. In late December 2019, a previously undiscovered coronavirus surreptitiously spread from animals to humans in a wet market in Wuhan, the capital of China's Hubei province, and began its march across continents, rivers and oceans, infecting countless people along the way.

2.     Unlike prior coronaviruses, such as the virus that caused Middle East Respiratory Syndrome, this virus and the disease it causes—dubbed COVID-19—spreads insidiously. Due to its potentially extensive incubation period and ability to transmit itself via asymptomatic hosts, COVID-19 has wreaked unprecedented havoc across the globe. Indeed, although the virus was not

detected in the United States until mid-January 2020, it has now infected more than one million people across the country.

3.     In an effort to slow the virus's spread and avoid overwhelming medical systems, beginning in late February state and local governments across the country began issuing "stay-at-home" orders that allowed residents to leave their homes only for necessities such as medical care and food.

4.     Unsurprisingly, airline travel has come to a near standstill as Americans find themselves unable to leave their homes, let alone travel domestically or internationally. Over the past few months Frontier and its competitors have had no choice but to cut schedules and cancel thousands of flights accordingly.

5.     Unfortunately for Plaintiffs and the putative Class (defined below), Frontier has shifted the burden of this extraordinary crisis onto its customers, who, in some cases, paid thousands of dollars for flights the COVID-19 pandemic precluded them from taking.

6.     Unlike its competitors, Frontier has engaged in a scheme to evade its obligation to refund to its customers monies paid for flights they will never take, but which they may sorely need in order to provide for themselves and their families during this trying time.

7.     Frontier is aware that federal law and its own Conditions of Carriage—which Frontier incorporates by reference into every ticket it sells—require Frontier to issue customers refunds for flights canceled due to COVID-19.

8.     As the pandemic grew, however, Frontier began to email passengers ticketed on flights Frontier intended to cancel and encourage them to preemptively cancel their flights in exchange for bonus credits of $50 per ticket or Frontier points. Frontier also failed to disclose that

if those passengers simply waited for Frontier to cancel their flights, Frontier was legally obligated to provide them with a full monetary refund.

9.     To make matters worse, Frontier requires consumers to apply the credits Frontier issued in lieu of refunds within 90 days, despite knowing full well Plaintiffs and the Class likely cannot do so because domestic air travel has come to a standstill and most passengers are unable to make future travel plans due to COVID-19.

10.    Through its misstatements and omissions, Frontier sought to deceive its loyal customers into allowing Frontier to avoid its refund obligations while providing only illusory credits likely to expire before Plaintiffs and the Class can use them.

11.    Frontier has engaged in unfair, unlawful, and unconscionable practices in order to unjustly enrich itself at the expense of its customers. Accordingly, Plaintiffs bring this action in order to secure refunds for each and every similarly situated consumer Frontier has wronged by refusing to issue full refunds for flights cancelled as a direct and proximate result of the COVID-19 crisis.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005, because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13.    This Court has personal jurisdiction over Frontier because it is headquartered in this judicial district.

14.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this District, transacts business in this District, is subject to personal jurisdiction in this District, and therefore is a citizen of this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

**Plaintiffs**

**Nelcy Alexa Rivera-De Leon**

15.     Plaintiff Nelcy Alexa Rivera-De Leon is a resident of Florida.

16.     On December 16, 2019, Plaintiff Rivera-De Leon purchased four tickets to fly round-trip on Frontier between Tampa, Florida and San Juan, Puerto Rico on March 13, 2020 and March 20, 2020, respectively.

17.     Plaintiff Rivera-De Leon paid approximately $483.00 for her Frontier tickets for a family vacation, which was to include her husband, Roger Zehr, and two minor children.

18.     Plaintiff Rivera-De Leon's husband, Roger Zehr, is active-duty military.

19.     On or about March 12, 2020, Roger Zehr was advised that, effective March 13, 2020, he was prohibited from non-military travel for 60 days.[1]

20.     When Plaintiff Rivera-De Leon learned that her husband would be unable to travel, she immediately cancelled her trip through Frontier's website.

21.     Upon cancelling her Frontier trip, Plaintiff Rivera-De Leon was advised by Frontier that she would only receive a credit toward a future trip rather than a refund of the purchase price, and that she had until June 11, 2020 to use those credits.

---

[1] *See,* "Travel Restrictions for DoD Components in Response to Coronavirus Disease 2019 (March 11, 2020) (available at: https://media.defense.gov/2020/Mar/11/2002263242/-1/-1/1/TRAVEL-RESTRICTIONS-FOR-DOD-COMPONENTS-IN-RESPONSE-TO-CORONAVIRUS-DISEASE-2019.PDF) (last visited May 19, 2020).

22.     Frontier ultimately cancelled Plaintiff Rivera-De Leon's return flight from San Juan, Puerto Rico to Tampa, Florida.

23.     Plaintiff Rivera-De Leon cannot apply her flight credits by June 11, 2020 because of ongoing restrictions imposed by COVID-19 that make it impossible for her to make future plans.

24.     Plaintiff Rivera-De Leon has called Frontier and attempted to contact it through Facebook Messenger on several occasion in hopes of securing a refund, but Frontier has ignored her phone calls and refused her requests for a full monetary refund.

25.     As of the filing of this Complaint, Frontier has not refunded Plaintiff Rivera-De Leon the price of her tickets.

**Piotr Tchorzewski**

26.     Plaintiff Piotr Tchorzewski is a resident of New Jersey.

27.     On December 20, 2019 Plaintiff Tchorzewski paid $1,245.63 for three tickets for himself and his family to fly round-trip on Frontier between Newark, New Jersey and Cancun, Mexico on April 10, 2020 and April 17, 2020, respectively. Plaintiff Tchorzewski also paid an additional $98 to select specific seats.

28.     On or about March 21, 2020, the Governor of New Jersey issued Executive Order No. 107, requiring New Jersey residents to stay at home.[2]

29.     On or about March 21, 2020, Plaintiff Tchorzewski received an email from Frontier recommending that he cancel his flights in exchange for a "bonus" $50 voucher per passenger on a new booking.

30.     On or about March 23, 2020, Plaintiff Tchorzewski clicked on the "more information" button on one of the emails Frontier sent to entice him to prematurely cancel his

---

[2] https://nj.gov/infobank/eo/056murphy/pdf/EO-107.pdf (last visited May 19, 2020).

flights, so as to learn more about his rights with respect to his Frontier tickets and the COVID-19 pandemic.

31.     When Plaintiff Tchorzewski clicked on the "more information" button, however, Frontier automatically cancelled his flight reservations in exchange for Frontier credit.

32.     Upon purportedly cancelling his Frontier trip, Frontier advised Plaintiff Tchorzewski that he would only receive a credit toward a future trip and the bonus credits he was promised rather than a refund of his purchase price, and that the credits he received in connection with his original purchase will expire on June 21, 2020.

33.     Significantly, Frontier refused to provide a refund or voucher for the seat reservations Plaintiff Tchorzewski purchased for $98.

34.     Plaintiff Tchorzewski then tried to re-book the flight Frontier had tricked him into purportedly cancelling, only to be told by Frontier that he could not because his previously scheduled flight had been cancelled by Frontier.

35.     Plaintiff Tchorzewski cannot apply his flight credits by June 21, 2020 because of ongoing restrictions imposed by COVID-19.

36.     Plaintiff Tchorzewski has called Frontier on several occasions in order to secure a refund, but Frontier has either ignored her phone calls or refused her request for a full monetary refund.

37.     As of the filing of this complaint, Frontier has not refunded Plaintiff Tchorzewski the price of his tickets.

**Stephanie Muters**

38.     Plaintiff Stephanie Muters is a resident of New York.

39.     On or about February 24, 2020, Plaintiff Muters purchased two airline tickets for herself and her daughter to fly round-trip on Frontier between Syracuse, New York and Tampa, Florida on April 5, 2020 and April 13, 2020, respectively.

40.     Plaintiff Muters paid approximately $849.60 for her Frontier tickets.

41.     Plaintiff Muters is employed as a civilian by the U.S. Department of Defense.

42.     Plaintiff Muters' daughter is health-compromised and uniquely susceptible to COVID-19.

43.     On or about March 12, 2020, Plaintiff Muters was advised that, effective March 13, 2020, she was prohibited from non-military travel for 60 days.[3]

44.     On or about March 17, 2020, Plaintiff Muters received an email from Frontier recommending that she cancel her flights in exchange for a "bonus" $50 voucher per passenger on a new booking.

45.     On or about March 22, 2020, the Governor of New York issued a stay-at-home order to New York residents that was extended through May 28, 2020.[4]

46.     On or about March 23, 2020, the Governor of Florida issued an Order requiring people flying to Florida from New York or New Jersey to undergo a 14-day quarantine.[5]

47.     Plaintiff Muters had planned to travel to Florida from New York, and her entire trip was scheduled for fewer than 14 days.

48.     On or about March 19, 2020, Plaintiff Muters cancelled her trip on Frontier because she had been ordered to refrain from travel by her employer, the U.S. Department of Defense; she had been enticed to do so by Frontier; she was ordered by her Governor to stay at home; and she

---

[3] *See* n. 1, *supra*.
[4] https://coronavirus.health.ny.gov/new-york-state-pause (last visited May 19, 2020).
[5] *See* n. 3, *supra*.

was ordered by the Governor of Florida to endure a 14-day quarantine if she did travel upon arrival in Florida.

49.     Upon cancelling her Frontier trip, Plaintiff Muters was advised by Frontier that she would only receive a credit toward a future trip rather than a refund of the purchase price, and that she has until June 17, 2020 to apply the credits she received for cancelling her flight.

50.     Frontier ultimately cancelled the flights on which Plaintiff Muters was scheduled to travel.

51.     Plaintiff Muters cannot apply her flight credits by June 17, 2020, because of both ongoing restrictions imposed by COVID-19 and the fact that she is uncertain when her health-compromised daughter will be able to travel again.

52.     Plaintiff Muters has called Frontier and attempted to contact it through Facebook Messenger on several occasions in hopes of securing a refund, but Frontier has either ignored her phone calls or refused her request for a full monetary refund.

53.     As of the filing of this complaint, Frontier has not refunded Plaintiff Muters the price of her tickets.

**<u>Defendant</u>**

54.     Defendant Frontier Airlines, Inc. is a corporation organized under the laws of the State of Colorado with a principal place of business at 4545 Airport Way, Denver, Colorado 80239.

55.     Defendant Frontier conducts substantial business throughout the United States, including in the States of Florida, New Jersey, and New York.

## FACTUAL ALLEGATIONS

### A. Frontier's Contract of Carriage

56.     According to Frontier, its "Contract of Carriage" applies "to all tickets issued for travel on flights operated by or for Frontier Airlines, Inc. ("Frontier") as well as that transportation regardless of whether such ticket was sold by Frontier or its authorized agents or whether such ticket is used[.]"[6]

57.     Under the Frontier Contract of Carriage Section 18, Subsection B, Frontier contracts with customers that, "[i]n the occurrence of a force majeure event, Frontier may cancel, divert, or delay any flight without liability *except to provide a refund for the unused portion of the ticket*."[7]

58.     Under these terms, if Frontier cancels a flight, it is contractually obligated to provide each affected ticketholder a refund for the full fare inclusive of taxes and fees.

### B. The COVID-19 Pandemic

59.     On March 11, 2020, the World Health Organization reclassified COVID-19 as a worldwide pandemic. That same night, President Trump made a televised address from the Oval Office during which he announced a moratorium on all flights from Europe (excluding Great Britain) for 30 days. The President extended that ban to Great Britain the very next day.

60.     The President declared a "National Emergency" on March 13, 2020 and, on March 15, 2020, the Centers for Disease Control and Prevention recommended that U.S. residents avoid

---

[6] Frontier Contract of Carriage § 1,
file://nvavsxencif01.mst.net/cbwhome$/ctourek/Downloads/cs_coc_41620.pdf (last accessed May 14, 2020)
[7] Frontier Contract of Carriage § 18.B,
file://nvavsxencif01.mst.net/cbwhome$/ctourek/Downloads/cs_coc_41620.pdf (last accessed May 14, 2020) (emphasis added).

Case 1:20-cv-01518   Document 1   Filed 05/28/20   USDC Colorado   Page 10 of 31
Case: 2:20-cv-00165-DLB-CJS   Doc #: 5-5   Filed: 11/25/20   Page: 11 of 32 - Page ID#:
105

gatherings of 50 people or more. The next day, the federal government tightened those guidelines
and recommended avoiding groups of 10 people or more.

61.     Despite these efforts, by March 23, 2020 the United States had reported more
confirmed cases of COVID-19 than any other county in the world, and by the end of March the
governors of most states had declared states of emergency due to COVID-19. State and local
officials across the country also issued stay-at-home orders that cancelled public events, banned
group gatherings, and closed schools, restaurants, and retail stores and prohibited unnecessary
travel for weeks, if not indefinitely.

**C.  The Airline Industry's Response to the COVID-19 Pandemic**

62.     As a direct and proximate result of this unprecedented crisis, in March 2020, many
airlines, including Frontier, cancelled or rescheduled flights.

63.     These cancellations continued into April 2020, when Frontier announced it would
be "cutting more than 90% of flight capacity nationwide in April" and expected to only "be in a
position to gradually build flight capacity back up to as much as 35% in May."[8]

64.     Frontier has since issued a statement saying that it will not achieve full flight
capacity until July 2020.[9]

65.     While most airlines throughout the world have provided refunds for flights canceled
due to COVID-19, some, including Frontier, have refused to issue refunds to customers.

---

[8] https://www.cleveland.com/business/2020/04/frontier-airlines-cuts-90-of-capacity-flying-only-to-orlando-from-cleveland-hopkins-in-april.html
[9] https://centreforaviation.com/analysis/reports/covid-19-frontier-airlines-has-a-more-bullish-view-than-most-524183

### D. The United States Department of Transportation's April 3, 2020 Enforcement Notice

66.     On April 3, 2020, in response to airlines' refusals to issue refunds to passengers for cancelled flights, the United States Department of Transportation issued an Enforcement Notice Regarding Refunds By Carriers Given the Unprecedented Impact of the COVID-19 Public Health Emergency On Air Travel" (the "Enforcement Notice").[10] The Enforcement Notice states that:

> Carries have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's scheduled flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions).

67.     Moreover, the requirement to provide a "prompt refund" applies to passengers who purchased "non-refundable tickets" and applies to any optional fee charged for services a passenger is unable to use, such as baggage fees, meals, and seat upgrades.

68.     The Enforcement Notice also states that this obligation "does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions)." Instead, airlines are required to offer refunds whenever passengers are not at fault for the cancellation, regardless of whether the cancellation is within or outside the carrier's control.

69.     The "longstanding obligation" regarding refunds is set forth in the Code of Federal Regulation. Specifically, consumers are entitled to refunds whenever their carrier cancels their flight. 76 Fed. Reg. 23110-01, at 23129 (Apr. 25, 2011) ("Since at least the time of an Industry Letter of July 15, 1996 . . . the Department's Aviation Enforcement Office has advised carriers that refusing to refund a non-refundable fare when a flight is cancelled and the passenger wishes

---

[10] Available at: https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf (last visited Apr. 6, 2020).

to cancel is a violation of 49 U.S.C. 41712 (unfair or deceptive practices) and would subject a carrier to enforcement action.").

**E. Frontier's Continued Failure to Provide Customers Refunds**

70.     Despite the plain language of its own Contract of Carriage and the guidance issued by the U.S. Department of Transportation, Frontier has engaged in a pattern and practice of denying refunds to its passengers for flights cancelled as a result of the COVID-19 pandemic.

71.     Frontier's scheme to deny refunds to its customers relies on making its refund mechanisms difficult to access. Instead of providing the refunds required by the Contract of Carriage and the Enforcement Notice, Frontier attempts to convince customers to pre-emptively cancel their flights for Frontier credit or points—failing to inform customers that they are, in fact, entitled to a full monetary refund if they simply wait for Frontier to cancel their flights.

72.     And, as Plaintiffs' experiences demonstrate, Frontier has typically cancelled the very flights it urged Plaintiffs and Class members to cancel in exchange for credits.

73.     In other words, Frontier sought to trick Plaintiffs and the Class into preemptively cancelling their flights in order to relieve Frontier of its obligation to issue full monetary refunds for flights it ultimately cancelled.

74.     Indeed, the COVID-19 pandemic and its accompanying uncertainty play an integral role in Frontier's scheme. In the form email Frontier repeatedly sent its customers urging them to prematurely cancel their reservation in response to a "limited time offer," an exemplar of which is included below, Frontier acknowledges that "things are difficult during this unprecedented time," before encouraging customers to cancel their flights:

# ACT NOW, OFFER ENDS TONIGHT



## 00
DAYS

## 00
HOURS

## 00
MINUTES

## 00
SECONDS

### ACT NOW TO QUALIFY!

### IMPORTANT INFORMATION ABOUT YOUR UPCOMING FLIGHT

## FINAL DAY – CANCEL AND RECEIVE A $50 VOUCHER PER PASSENGER ON YOUR BOOKING

Valued Customer,

We want to thank you for choosing Frontier. We know things are difficult during this unprecedented time and we want to provide you another option for your upcoming travel with us.

Cancel your booking today and you will receive a **$50 per person voucher for future travel**. This is in addition to a travel credit applicable to a future Frontier flight for the full amount of your unused ticket.

## STEP 1

Simply go to **flyfrontier.com** now and cancel your flight via the "**My Trips/Checkin**" tab.

## STEP 2

You will automatically receive your credit for future use and **also** receive your additional voucher within seven days of your cancellation to the email address used in the original booking. Your **$50 per person**

**voucher** will be available for booking through Dec. 31, 2020. The best part is your travel does not need to be completed by Dec. 31 just booked!

To qualify for the $50 per person voucher and flight credit, you must cancel your flight **TONIGHT** (Friday, March 27). This offer is valid for flights scheduled from **March 28 – June 17**. If you did not book your travel with Frontier directly, you will need to update your contact information when you cancel your flight. For more about this offer, **click here**.

We appreciate your continued patience and understanding as we navigate this challenging time, and we hope to serve you on many future Frontier flights.

Team Frontier

75.     After deceiving customers like Plaintiffs to opt for Frontier credit or points instead of the refund to which they are entitled, Frontier uses the Frontier credit selection as basis on which to deny refunds for flights it later cancelled.

76.     Moreover, whenever a customer chooses to pre-emptively cancel their flight, Frontier does not refund them —in Frontier credit or otherwise—any of the additional fees they incurred when purchasing their original airline tickets, such as fees paid for seat selection.

77.     The Frontier credits provide Frontier additional opportunities to charge service, processing baggage, seat selection, and other fees that will ensure Frontier additional future profits—while retaining Plaintiff and Class members' cash—substantially diminishing any value for Plaintiff and the Class members.

78.     Moreover, Frontier requires customers to apply the credits in as few as ninety (90) days, or risk that the credit will expire. This durational limit is unduly narrow, particularly in the throes of the COVID-19 pandemic, which has rendered future airline travel uncertain.

79.     When customers pre-emptively cancel their flights—often at Frontier's urging—they subsequently receive a confirmation email that outlines how much in Frontier credit they will receive and a single line in the middle of the email informing customers that "[t]his Customer Credit will expire 90 days from [that date on which the customer cancelled their flight]."

80.     This time limit to use the credits renders them worthless during the COVID-19 pandemic while air travel is at a virtual standstill and will likely remain that way for quite some time.

81.     Indeed, any future travel plans Plaintiffs or Class members might make are in flux due to the uncertainty and quarantine-restrictions caused by the COVID-19 pandemic.

82.     Despite the significant backlash to Frontier's cancelation and refund policy, Frontier continues to refuse to provide cash refunds to passengers for flights cancelled due to COVID-19.

## CLASS ALLEGATIONS

83.     Plaintiffs bring this action, individually and, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), on behalf of a Nationwide Class defined as follows:

> All persons in the United States who purchased airline tickets through Frontier Airlines, or for flights on Frontier Airlines, to, from or within the States, and sought to cancel their flights, or had their flights cancelled, on or after February 29, 2020.

84.     In the alternative, Plaintiffs bring this class action on behalf of the following State Classes:

> **The Florida Class**:
>
> All persons in Florida who purchased airline tickets through Frontier Airlines, or for flights on Frontier Airlines, to, from or within the United States, and sought to cancel their flights, or had their flights cancelled, on or after February 29, 2020.

**The New Jersey Class**:

All persons in New Jersey who purchased airline tickets through Frontier Airlines, or for flights on Frontier Airlines, to, from or within the United States, and sought to cancel their flights, or had their flights cancelled, on or after February 29, 2020.

**The New York Class**:

All persons in New York who purchased airline tickets through Frontier Airlines, or for flights on Frontier Airlines, to, from or within the United States, and sought to cancel their flights, or had their flights cancelled, on or after February 29, 2020.

85.    Together, the National Class, the Florida Class, New Jersey Class, and New York Class shall be collectively referred to herein as the "Class."

86.    Excluded from the Class are: (a) Frontier; (b) Frontier's affiliates, agents, employees, officers and directors; and (c) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family.

87.    **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identity of individual members of the Class are unknown at this time, such information is in the sole possession of Frontier and obtainable by Plaintiffs only through the discovery process. Plaintiffs believe, and on that basis allege, that the Class consists of hundreds of thousands of people.

88.    **Commonality**: Common questions of law and fact exist as to all members of each Class. These questions predominate over questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.    Whether federal regulations require Frontier to provide passengers a refund when Frontier cancels their flights;

b.    Whether Frontier committed common law fraud;

c.    Whether Frontier was unjustly enriched by its conduct; and

       d.       Whether Frontier violated its Contract of Carriage.

89.    **Typicality**: Plaintiffs have the same interest in this matter as all Class members, and Plaintiffs' claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiffs' and Class members' claims all arise out Frontier's uniform conduct, statements, and unlawful, unfair, and deceptive acts and practices.

90.    **Adequacy**: Plaintiffs have no interest that conflicts with the interests of the Class, and are committed to pursuing this action vigorously. Plaintiffs have retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

91.    **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Frontier's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly-situated individuals. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

92.    Frontier has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## COUNT I
## CONVERSION
**(on behalf of the Nationwide Class, or alternatively the Florida, New Jersey and/or New York Classes)**

93.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

94.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Frontier.

95.     Plaintiffs and Class members have an ownership right to the monies paid for the tickets for cancelled flights sold by Frontier, as well as for the consequential damages resulting therefrom.

96.     Frontier has wrongly asserted dominion over the payments illegally diverted to them for the cancelled flights, and consequential damages resulting therefrom. Frontier has done so every time Plaintiffs and Class members paid to purchase a ticket for a flight that was later cancelled or subject to a significant schedule change by Frontier.

97.     As a direct and proximate cause of Frontier's conversion, Plaintiffs and Class members suffered damages in the amount of the payments made for each time they purchased a ticket for a flight that was cancelled or subject to a significant schedule change by Frontier, and in the amount of consequential damages resulting therefrom.

## COUNT II
## COMMON LAW FRAUD
**(on behalf of the Nationwide Class, or alternatively the Florida, New Jersey and/or New York Classes)**

98.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

99.      Frontier made material misrepresentations and/or omissions concerning the ability of Plaintiffs and Class members to receive refunds for cancelled flights. For example, Frontier falsely represented that Plaintiffs and the Class members were only entitled to travel credits rather than refunds. As a result, Plaintiffs and the other Class members were fraudulently induced to accept travel credits in exchange for their unusable tickets and not provided with refunds.

100.    Frontier had a duty to disclose to Plaintiffs and the Class members that they were entitled to refunds but failed to do so.

101.    These misrepresentations and omissions were made by Frontier with knowledge of their falsity, and with the intent that Plaintiffs and Class members rely upon them.

102.    Plaintiffs and Class members reasonably relied on these omissions, and suffered damages as a result.

**COUNT III**
**UNJUST ENRICHMENT**
**(on behalf of the Nationwide Class, or alternatively the Florida, New Jersey and/or New York Classes)**

103.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

104.    Plaintiffs and the Class conferred a direct benefit on Frontier by purchasing airline tickets.

105.    Frontier knowingly and willingly accepted and enjoyed the benefits conferred on it by Plaintiff and the Class.

106.    Frontier's retention of these benefits in unjust and inequitable due to the conduct described herein.

107.    As a direct and proximate cause of Frontier's unjust enrichment, Plaintiffs and the Class are entitled to an accounting, restitution, attorneys' fees, costs and interest.

**COUNT IV**
**BREACH OF CONTRACT**
**(on behalf of the Nationwide Class, or alternatively the Florida, New Jersey and/or New York Classes)**

108.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

109.    Plaintiffs bring this claim on behalf of himself and members of the Class.

110.    This claim for breach of contract damages or, in the alternative, specific performance of the contract's refund terms, is based on Frontier's breaches of its Contract of Carriage.

111.    Frontier entered into Contracts of Carriage with Plaintiffs and Class members to provide services in the form of flights in exchange for customer payment of fares and other fees.

112.    Frontier drafted these Contracts of Carriage.

113.    Plaintiffs and all putative class members performed under the Contract of Carriage. Specifically, Plaintiffs and Class members tendered payment for airline tickets to Frontier and complied with all conditions precedent under the Contract of Carriage.

114.    Due to Frontier's cancellation of its flights, Plaintiffs and Class members cannot use their airline tickets through no fault of their own and are not receiving the benefit of their bargain with Frontier.

115.    Under the terms of the Contract of Carriage drafted by Frontier, Plaintiffs and Class members are entitled to refunds because Frontier cancelled their flights and did not accommodate and transport the customers to their destinations on another flight. Contract of Carriage § 18(a)(1).

116.    By failing to provide refunds, Frontier has breached its Contract of Carriage.

117.    As a result of Frontier's breaches of contract, Plaintiffs and Class members have incurred substantial damages.

**COUNT V**
**VIOLATION OF THE FLORIDA DECEPTIVE AND**
**UNFAIR TRADE PRACTICES ACT**
**Fla. Stat. § 501.201, *et seq*.**
**(By Plaintiff Rivera-De Leon on behalf of the Florida Class)**

118.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

119.    The purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202 (2).

120.    The actions of Frontier, as set forth above, occurred in the conduct of trade or commerce.

121.    In the course of Frontier's business, it intentionally and knowingly misrepresented material facts regarding refund options available to Plaintiff Rivera-De Leon and Florida Class members with the intent to mislead the Florida Class, as described above. Indeed, Frontier deceptively persuaded Florida Class members to pre-emptively cancel their flights and accept expiring "Frontier credit," rather than a full monetary refund. Accordingly, Frontier engaged in unfair and deceptive acts or practices.

122.    Frontier should have disclosed this information because it was in a superior position to know the true facts related to its plans to cancel or delay future Frontier flights, as well as its obligation under both the Contract of Carriage and the Enforcement Notice to provide full monetary refunds, and Plaintiff Rivera-De Leon and the Florida Class could not reasonably be expected to learn or discover the true facts related to these internal Frontier plans. Frontier, by the conduct and omissions described above, also knowingly and intentionally concealed from Plaintiff

Rivera-De Leon and the Florida Class that Frontier planned to cancel or seriously delay future Frontier flights, thereby entitling Florida Class members to full monetary refunds for the tickets they purchased.

123.   Frontier knowingly misrepresented the rights of Florida Class members, as well as its own obligations, in an attempt to avoid providing Florida Class members any refunds, and instead reimburse Plaintiff and the Florida Class with illusory Frontier credits.

124.   These acts and practices have deceived Plaintiff Rivera-De Leon and the Florida Class and are likely to, and did, deceive the public. In failing to disclose Frontier's future flight plans and its refund obligations, and suppressing material facts from Plaintiff Rivera-De Leon and the Florida Class, Frontier breached its duties to disclose these facts, violated the FDUTPA, and caused injuries to Plaintiff Rivera-De Leon and the Florida Class.

125.   The omissions and acts of concealment by Frontier pertained to information that was material to Plaintiff Rivera-De Leon and the Florida Class, as it would have been to all reasonable consumers. Had Plaintiff Rivera-De Leon and the Florida Class known that Frontier was planning to cancel and/or seriously delay most future flights, and that doing so would entitle customers to full refunds, they would either not have pre-emptively canceled their flights for expiring "Frontier credit."

126.   The injuries suffered by Plaintiff Rivera-De Leon and the Florida Class are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff Rivera-De Leon and the Florida Class should have reasonably avoided.

127.   Frontier's conduct proximately caused injuries to Plaintiff and the Florida Class.

128.   Plaintiff Rivera-De Leon and the Florida Class are entitled to recover legal and/or equitable relief including an order enjoining Frontier's unlawful conduct, actual damages in the

amount of full monetary refunds, costs and reasonable attorneys' fees pursuant to F. STAT. § 501.2105, and any other just and appropriate relief.

## COUNT VI
## VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT
### (N.J. Stat. Ann. § 56:8-1, e*t. seq.*)
### (By Plaintiff Tchorzewski on behalf of the New Jersey Class)

129.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

130.   Plaintiff Tchorzewski, the New Jersey Class, and Frontier are or were "person[s]" within the meaning of N.J. STAT. ANN. § 56:8-1(d).

131.   Frontier engaged in the "sale" of "merchandise" within the meaning of N.J. STAT. ANN. § 56:8-1(c), (d).

132.   The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…" N.J. STAT. ANN. § 56:8-2. Frontier engaged in unconscionable or deceptive acts or practices that violated the New Jersey CFA as described above and below, and did so with the intent that Class members rely upon their acts, concealment, suppression or omissions.

133.   In the course of its business, Frontier willfully failed to disclose and actively concealed Frontier's plan to cancel their flights and its refund obligations to the New Jersey Class,

and instead attempted to convince customers to pre-emptively cancel the airline tickets they purchased from Frontier in exchange for "Frontier credit"—credit which expired within 90 days.

134.    Frontier also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and cancellations of Frontier flights. Frontier is directly liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the New Jersey CFA.

135.    Frontier knew or should have known that its conduct violated the New Jersey CFA.

136.    As alleged above, Frontier made false or misleading material statements about Frontier's flight plans in an attempt to convince Plaintiff Tchorzewski and New Jersey Class members to preemptively cancel their flights in order to relieve Frontier of its obligation to issue refunds for flights it ultimately cancelled.

137.    Frontier also employed deceptive emails that automatically cancelled a customer's Frontier airline reservation when the customer sought to gain more information.

138.    Frontier knew that Plaintiff Tchorzewski and New Jersey Class members were entitled to a full monetary refund, but withheld that information from Class members.

139.    Frontier owed Plaintiff Tchorzewski and New Jersey Class a duty to disclose its plans to cancel future Frontier flights, as well as Frontier's duty to provide full refunds to Class members, due to the COVID-19 pandemic because it:

    a.    Possessed exclusive knowledge about Frontier's future flight plans;

    b.    Intentionally concealed the Frontier's future flight plans and its refund obligations; and/or

      c.    Made incomplete representations about New Jersey's Class members' ability to change and/or cancel their flights.

140.    Frontier's unfair or deceptive acts or practices were likely to deceive reasonable consumers, including Plaintiff Tchorzewski and the New Jersey Class, about Frontier's future flight plans and its refund obligations. Frontier intentionally and knowingly misrepresented material facts regarding refund options available to Plaintiff Tchorzewski and New Jersey Class members with the intent to mislead the New Jersey Class.

141.    Had Plaintiff Tchorzewski and the New Jersey Class known that Frontier was planning to cancel and/or seriously delay most future flights, and that doing so would entitle customers to full refunds, they would either not have pre-emptively canceled their flights for expiring "Frontier credit."

142.    All members of the New Jersey Class, including Plaintiff Tchorzewski, suffered ascertainable losses caused by Frontier's failure to disclose material information.

143.    Plaintiff Tchorzewski and New Jersey Class members have been damaged by Frontier's misrepresentations, concealment, and non-disclosure of Frontier's future flight plans and the refund options Plaintiff Tchorzewski and New Jersey Class members had, as they now hold only expiring, illusory "Frontier credits" that expose customers to further charges by Frontier.

144.    Plaintiff Tchorzewski and New Jersey Class members risk irreparable injury as a result of Frontier's act and omissions in violation of the New Jersey CFA, and these violations present a continuing risk to them as well as to the general public. Frontier's unlawful acts and practices complained of herein affect the public interest.

145.    As a direct and proximate result of Frontier's violations of the New Jersey CFA, Plaintiff Tchorzewski and the New Jersey Class has suffered injury-in-fact and/or actual damage.

146.     Plaintiff Tchorzewski and the New Jersey Class are entitled to recover legal and/or equitable relief including an order enjoining Frontier's unlawful conduct, treble damages, costs and reasonable attorneys' fees pursuant to N.J. STAT. ANN. § 56:8-19, and any other just and appropriate relief.

147.     Pursuant to N.J. STAT. ANN. § 56:8-20, Plaintiff Tchorzewski and the New Jersey Class will mail a copy of the complaint to New Jersey's Attorney General within ten (10) days of filing it with the Court.

## COUNT VII
## VIOLATION OF NY DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (GBL § 349)
### (By Plaintiff Muters on behalf of the New York Class)

148.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

149.     New York General Business Law § 349 ("NY GBL § 349") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in furnishing of any service in this state…"  NY GBL § 349(a).

150.     Any person who has been injured by reason of any violation of NY GBL § 349 "may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff." NY GBL § 349(h).

151.     Frontier's actions, as set forth above, occurred in the conduct of business, trade or commerce.

152.     In the course of Frontier's business, it willfully failed to disclose and actively concealed Frontier's future flight plans and its refund obligations, and instead attempted to convince customers pre-emptively cancel the airline tickets they purchased from Frontier in exchange for "Frontier credit"—credit which expired within 90 days. Accordingly, Frontier engaged in unfair and deceptive acts or practices.

153.     Frontier should have disclosed this information because they were in a superior position to know the true facts related to the Defect, and Plaintiff Muters and New York Class members could not reasonably be expected to learn or discover the true facts related to Frontier's plans to cancel or seriously delay future flights. Frontier, by the conduct, statements, and omissions described above, also knowingly and intentionally concealed from Plaintiff Muters and the New York Class members that it planned to cancel or seriously delay all future Frontier flights, which would entitled ticket holders to full monetary refunds.

154.     These acts and practices have deceived Plaintiff Muters and the New York Class and are likely to, and did, deceive the public. In failing to disclose Frontier's future plans and its obligation to ticket holders, and suppressing material facts from Plaintiffs and the Class members, Frontier breached its duties to disclose these facts, violated the NY GBL § 349, and caused injuries to Plaintiffs and the Class members.  The omissions and acts of concealment by Frontier pertained to information that was material to Plaintiffs and Class members, as it would have been to all reasonable consumers.

155.     Frontier's unfair or deceptive acts or practices were likely to deceive reasonable consumers, including Plaintiff Muters and the New York Class, about Frontier's future flight plans and its refund obligations. Frontier intentionally and knowingly misrepresented material facts

regarding Frontier's future flight plans and its refund obligations to Plaintiff Muters and New York Class members with the intent to mislead the New York Class.

156.   Frontier's deceptive acts are material as they concern the flights that consumers purchased tickets for, as well as the rights and obligations ticket holders had when those flights were cancelled or delayed due to the COVID-19 pandemic. Had Plaintiff Muters and the New York Class known that Frontier was planning to cancel and/or seriously delay most future flights, and that doing so would entitle customers to full refunds, they would either not have pre-emptively canceled their flights for expiring, illusory "Frontier credit."

157.   The sale and distribution in New York of the Frontier airline tickets (and the subsequent cancellation of those tickets) was a consumer-oriented act, and thereby falls under the New York deceptive acts and practices statute.

158.   Frontier conduct proximately caused injuries to Plaintiff Muters and other New York Class members. Had Plaintiff Muters and the New York Class known about their rights to receive a full monetary refund, they would not have been tricked into pre-maturely cancelling their flights in exchange for expiring, illusory Frontier credits.

159.   At all times, Frontier's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous.

160.   Frontier's actions impact the public interest because Plaintiffs and members of the New York Class were injured in exactly the same way as thousands of others who purchased and subsequently pre-maturely cancelled their Frontier flights in exchange for illusory Frontier credits.

161.   Frontier also has refused to act on grounds generally applicable to the injunctive relief sought by Plaintiff Muters, thereby making final injunctive relief appropriate.

162.     Frontier persists in its deceptive and unfair sales practices regarding the failure to provide full monetary refunds to consumers who purchased Frontier airline tickets, including Plaintiff Muters and the New York Class.

163.     If Frontier is allowed to continue with these practices, consumers, including Plaintiff Muters and the New York Class, will be irreparably harmed. Plaintiff Muters and the New York Class do not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged in this Complaint unless injunctive relief is granted to stop Frontier's deceptive scheme to trick Frontier customers into accepting expiring, illusory "Frontier credit," in exchange for pre-emptively cancelling the customers' flights, so that Frontier can avoid providing a full monetary refund.

164.     Thus, Plaintiff Muters and the New York Class members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees, as well as injunctive relief requiring Frontier to cease its unfair and deceptive practices relating to the failure to provide full monetary refunds for Frontier flights during the COVID-19 pandemic.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully request that this Court:

A.     Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class(es) as defined above;

B.     Appoint Plaintiffs as the representatives of the Class and their counsel as Class Counsel;

C.     Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D.     Award pre-judgment and post-judgment interest on such monetary relief;

Case 1:20-cv-01518   Document 1   Filed 05/28/20   USDC Colorado   Page 30 of 31
Case: 2:20-cv-00165-DLB-CJS   Doc #: 5-5   Filed: 11/25/20   Page: 31 of 32 - Page ID#:
125

E. Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Frontier to issue refunds of ticket prices to any member of the class who requests a refund;

F. Award reasonable attorney's fees and costs; and

G. Grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the putative Class, demands a trial by jury on all issues so triable.

Dated: May 28, 2020    Respectfully submitted,


           *s/ Kathryn J. Stimson*
           Kathryn J. Stimson
           Jamie Hubbard
           **STIMSON STANCIL LABRANCHE HUBBARD, LLC**
           1652 Downing Street
           Denver, CO 80218
           Phone: 720.689.8909
           Email: stimson@sslhlaw.com
              hubbard@sslhlaw.com

           Daniel O. Herrera*
           Christopher P.T. Tourek*
           **CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
           150 S. Wacker, Suite 3000
           Chicago, Illinois 60606
           Telephone: 312-782-4880
           Facsimile: 318-782-4485
           dherrera@caffertyclobes.com
           ctourek@caffertyclobes.com

           Bryan L. Clobes*
           **CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
           205 N. Monroe St.
           Media, Pennsylvania 19063
           Telephone: 215-864-2800
           bclobes@caffertyclobes.com

Case 1:20-cv-01518   Document 1   Filed 05/28/20   USDC Colorado   Page 31 of 31
Case: 2:20-cv-00165-DLB-CJS   Doc #: 5-5   Filed: 11/25/20   Page: 32 of 32 - Page ID#:
126

Joseph G. Sauder*
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone: (610) 200-0580
jgs@sstriallawyers.com

***Attorneys for the Plaintiffs and the Putative
Class***

*\*Admission pro hac vice anticipated*