# EXHIBIT 5

Hassan A. Zavareei (SBN 181547)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: hzavareei@tzlegal.com

Jeff Ostrow*
Jonathan M. Streisfeld*
Joshua R. Levine*
Daniel Tropin*
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
1 West Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
Email: streisfeld@kolawyers.com
        ostrow@kolawyers.com

Melissa S. Weiner*
PEARSON, SIMON & WARSHAW, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
Email:  mweiner@pswlaw.com

Daniel L. Warshaw (SBN 185365)
PEARSON, SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

*pro hac vice application forthcoming

Counsel for Plaintiff and the Proposed Class

## IN THE UNITED STATES DISTRICT COURT FOR THE
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIKS OBERTMAN, on behalf of himself and all others similarly situated<br><br>    Plaintiff,<br>v.<br><br>FRONTIER AIRLINES INC.,<br><br>    Defendant. | **CLASS ACTION COMPLAINT**<br><br>Case No.<br><br>**JURY TRIAL** |

CLASS ACTION COMPLAINT

## CLASS ACTION COMPLAINT

Plaintiff, Feliks Obertman ("Obertman" or "Plaintiff"), on behalf of himself and all others similarly situated, by and through undersigned counsel, files this Class Action Complaint against Frontier Airlines, Inc. ("Frontier" or "Defendant"), and alleges the following:

### INTRODUCTION

1.      Frontier is the eighth-largest commercial airline in the United States, operating flights to over 100 destinations throughout the United States and 30 international destinations. Frontier typically operates around 300 daily flights. But this year, Frontier has responded to a sudden drop in demand for passenger air travel by canceling scores of scheduled flights.

2.      Under the terms of Frontier's uniform contracts with its customers, when the airline cancels a flight, the airline must either re-accommodate passengers on another flight or refund the passengers. Frontier has breached its contracts with thousands of paying customers by offering credits for future travel on the airline instead of providing refunds for flights canceled by the airline.

### Declining Demand in Light of Novel Coronavirus Severely Impacts Frontier's Operations

3.      On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness.  Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or SARS-CoV-2. The illness caused by the virus has been termed COVID-19. By January 21, 2020, officials in the United States were confirming the first known domestic cases of COVID-19.

4.      Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

5.      On March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

6.      In efforts to curb the spread of the virus, federal, state and local governments have

implemented temporary travel restrictions and guidelines advising against essential travel. In the United States, the federal government has limited travel from China, Europe, and the United Kingdom, permitting only the return of U.S. citizens and permanent residents. The Department of State also advised on March 19, 2020, that U.S. citizens should temporarily avoid all international travel, with the exception that U.S. residents abroad should arrange for immediate return to the United States where possible.

7.     State and local governments have also restricted local travel. On March 16, 2020, seven counties in the San Francisco, California area announced shelter-in-place orders to reduce local traffic to activities necessary to perform "essential" activities. Other states, counties, and municipalities have since implemented similar shelter-in-place orders, and as of the drafting of this Class Action Complaint, at least 316 million people in at least 42 states, three counties, nine cities, the District of Columbia, and Puerto Rico are living under such orders.

8.     In addition to health and safety concerns, people across the country are facing increasing economic stress due to the novel coronavirus, including unemployment levels not seen since the Great Depression.

9.     As the travel limitations, virus fears, and economic uncertainties mounted, consumer demand for air travel, particularly leisure and non-essential business travel, quickly declined. In response to this declining demand, Frontier has cancelled many flights in the United States to avoid flying planes with too many empty seats to be profitable.

10.     The main way that airlines like Frontier determine operational capacity (*i.e.*, how many flights it markets and flies) is by looking at passenger "load factors" on each route. Load factors measure the percentage of seats filled on an aircraft (or set of aircraft) scheduled to depart. Load factors can be determined for an overall schedule (all flights to all destinations), for particular routes (all flights between two airports), or for particular flight service (a specific scheduled flight with its own flight number). If load factors fall too low, airlines will determine that operating flight service as

scheduled would not be profitable (or otherwise economically desirable) and will then typically modify the schedule—including by canceling previously scheduled flights

11.     Frontier's overall load factor is typically around 85-89%. But with declining customer demand in light of COVID-19, the airline has seen significant drops in its load factors.

12.     Driven by the drop in travel demand, Frontier decreased its total flight capacity by 90% in April. It plans to fly at only 35% of the usual flight capacity by May 2020.

### Frontier Offers Customers Credit Where Refunds Are Due

13.     When Frontier cancels a flight, its contracts with its passengers require the airline to either (1) reaccommodate and transport passengers to their destination on another flight; or (2) provide a full refund for any unflown flight segments. The contract terms governing cancellations by the airline do not give Frontier the option of providing customers with a "credit" for future travel on the airline instead of a refund.

14.     Nevertheless, after canceling as many as 90% of its scheduled flights, Frontier has offered many of its canceled passengers only two options: (1) rebook your flight—sometimes weeks or more from the original travel date—or (2) obtain travel credit.

15.     However, as will be explained below, Frontier's Contract of Carriage mandates refunds, not credits, in this situation.

16.     Instead of following the terms of its Contract of Carriage, Frontier is unilaterally pushing vouchers or credits on customers, making it impossible for many customers to request refunds, and denying refunds when legitimate requests are made.

17.     Frontier is placing its concern for its own financial stability ahead of the significant economic impacts its consumers are facing in this unprecedented economic downturn. In just over one month, over 22 million people in the United States have applied for unemployment benefits, and the U.S. unemployment rate has climbed to over 20%—the worst it has been since the Great Depression. As many as one-third of the 40 million renters in the U.S. are unable to make their rent,

and millions of people with home mortgages will likely face foreclosure. Meanwhile, Frontier is currently slated to receive an influx of government rescue funds, in the form of grants and loans that will likely be forgiven. These government bailout funds are tied to the airline's commitment to provide a minimum level of service to airline customers, and yet, Frontier is already failing to meet its commitments to existing customers who are owed refunds. Now more than ever, customers whose flights or reservations have been canceled by Frontier need the prompt refunds to which they are entitled.

18.     As numerous customers complained about this practice by Frontier and other airlines, the DOT issued an Enforcement Notice Regarding Refunds by Carriers Given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel ("DOT Notice").  The DOT Notice provides that the airlines must refund tickets if they cancel flights due to the novel coronavirus:

> The U.S. Department of Transportation's Office of Aviation Enforcement and Proceedings (Aviation Enforcement Office), a unit within the Office of the General Counsel, is issuing this notice to remind the traveling public, and U.S. and foreign carriers, operating at least one aircraft having a seating capacity of 30 or more seats, that passengers should be **_refunded promptly_** when their scheduled flights are cancelled or significantly delayed. Airlines have long provided such refunds, including during periods when air travel has been disrupted on a large scale, such as the aftermath of the September 11, 2001 attacks, Hurricane Katrina, and presidentially declared natural disasters. Although the COVID-19 public health emergency has had an unprecedented impact on air travel, **_the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged._**
>
> The Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed. In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future travel. But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency. As a result, passengers are left with cancelled or significantly delayed flights and vouchers and credits for future travel that are not readily usable.
> **_Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions). The focus is not on whether the flight_**

*disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger.* Accordingly, the Department continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action.[1]

(emphasis added).

19.   Thus, Frontier's failure to provide prompt refunds for canceled flights violates not only its own Contract of Carriage, but also federal law.

## PARTIES, JURISDICTION, AND VENUE

20.   Feliks Obertman is a California citizen who resides in Elk Grove, California.

21.   Defendant is a Colorado for-profit corporation having its principal place of business in Denver, Colorado.

22.   This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendant.

23.   Venue is proper in this Court pursuant to 28 U.S.C. §1391, because this is the judicial district in which a substantial part of the events giving rise to the claims asserted herein occurred.

## GENERAL ALLEGATIONS

24.   On March 17, 2020, Plaintiff purchased two roundtrip tickets for travel from Sacramento (SMF) to Denver Intl (DEN), for him and his wife. The flight was scheduled to depart on May 8, 2020.

---

[1] U.S. Dep't of Transportation, Enforcement Notice Regarding Refunds by Carriers given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel (Apr. 3, 2020), https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf.

25.    On March 21, 2020, Plaintiff purchased one additional roundtrip ticket for his daughter for the same flight—Sacramento (SMF) to Denver Intl (DEN).

26.    On or about March 23, 2020, Plaintiff received an email from Frontier informing him that the May 8th flight had been cancelled and he would be rebooked.

27.    On or about March 31, 2020, Plaintiff received an email from Frontier informing him that the reservation had been further modified and he was now booked on a flight scheduled to depart Sacramento on May 10, 2020.

28.    Plaintiff contacted Frontier and was informed that his two options were to accept this rebooked flight, two days after his originally scheduled trip, or take a credit for future travel on Frontier. Plaintiff requested a refund, but Frontier told him that option was not available to him. Having no need for a plane ticket on May 10, 2020, Plaintiff was forced to accept the credit subject to expiration.

29.    In sum, despite the fact that Plaintiff could not take the flight he booked because Frontier canceled it, Frontier failed to provide a refund to Plaintiff and, instead, only offered Plaintiff a voucher for use on a future Frontier flight.

### The Contract

30.    Every Frontier passenger air travel ticket incorporates by reference (including in some cases by hyperlink) and is governed by Frontier's Contract of Carriage. *See* **Contract of Carriage, attached as Exhibit A.** Frontier drafted the Contract of Carriage.

31.    Section 18 of the Contract of Carriage governs in a situation where Frontier cancels a flight, as was the case for Plaintiff and other Class members. While there are a number of circumstances under which Frontier could cancel a flight, in every case, Frontier is required to provide a reasonable accommodation to the passenger's ticketed destination or refund the fare.

32.    The Contract of Carriage states in relevant part:

B. Force Majeure - In the occurrence of a force majeure event, Frontier may cancel,

divert, or delay any flight without liability *except to provide a refund for the unused portion of the ticket.*

C. Delay, Misconnection, or Cancellation – In the event (i) a passenger's flight is canceled, (ii) a passenger is denied boarding because an aircraft with lesser capacity is substituted, (iii) a passenger misses a connecting Frontier flight due to a delay or cancellation of a Frontier flight (but not flights of other carriers), (iv) a passenger is delivered to a different destination because of the omission of a scheduled stop to which the passenger held a ticket, to the extent possible, Frontier will provide transportation on its own flights at no additional charge to the passenger's original destination or equivalent destination as provided herein. Frontier will have no obligation to provide transportation on another carrier. *If Frontier cannot provide the foregoing transportation, Frontier shall, if requested, provide a refund for the unused portion of the passenger's ticket in lieu of the transportation under the foregoing.* The foregoing shall be the limit of Frontier's liability for the matters covered by this provision.

* * *

E. Schedule Change Prior to Day of Travel -- When a passenger's itinerary is changed because of a modification in Frontier's schedule, arrangements will be made to:

    1) Transport the passenger over its own route system to the destination; or
    2) In the event Frontier determines that the schedule modification is significant, Frontier shall, if requested, *provide passengers a refund of the cost of the unused portion of the ticket.*

Ex. A at § 18 (emphasis added).

33.    Section 20(B)(3) specifies that "[a] refund will be provided only to the original purchaser's form of payment."

34.    Further, under Frontier's Customer Service Plan, Frontier reiterates that in the event of a flight cancellation—whether caused by a controllable situation or an uncontrollable situation—Frontier will "provide you, upon request, a full refund of any unused portion of your ticket." **Exhibit B, Frontier Customer Service Commitment, ¶ 12.**

35.    Both Section 18 of the Contract of Carriage and paragraph 12 of the Customer Service Plan clearly provide for either rebooking or a refund in the event that Frontier cancels a flight. Neither provision provides for any "credit" for use on a future Frontier flight.

36.    Here, Plaintiff's flight was canceled, and Frontier only offered to rebook him on

another flight two days after his and his families' originally scheduled travel date. Plaintiff informed

Frontier that the rebooked flight was not an acceptable alternative transportation and that Plaintiff

would not be taking that flight. Plaintiff had not used any portion of the roundtrip ticket for his trip.

Thus, pursuant to the terms of the Contract of Carriage, Plaintiff is entitled to a refund of the fare

for the roundtrip ticket in U.S. Dollars to his original form of payment. Ex. A at §§ 18; 20(B)(3).

## CLASS ACTION ALLEGATIONS

37.     Pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2) and (b)(3), as applicable, Plaintiff seeks

certification of the following nationwide class (the "Class"):

> All persons in the United States who purchased tickets for travel on a
>
> Frontier Airlines flight scheduled to operate from March 1, 2020
>
> through the date of a class certification order, whose flight(s) were
>
> canceled by Frontier, and who were not provided a refund.

38.     Excluded from the Class are Defendant, any entity in which Defendant has a

controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries,

and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members

of their immediate family, and members of their judicial staff, and any Judge sitting in the presiding

court system who may hear an appeal of any judgment entered. Also excluded from the Class is any

person who was reaccommodated and transported to their ticketed destination by Defendant or its

agents.

39.     Plaintiff reserves the right to amend or modify the Class definition with greater

specificity or division after having had an opportunity to conduct discovery.

40.     The Class meets the criteria for certification under Rule 23(a), (b)(1), (b)(2), (b)(3) and

(c)(4).

41.     **Risk of Inconsistent or Varying Adjudications. Fed. R. Civ. P. 23(b)(1).** As the

proposed class members include thousands of persons across all 50 states, there is significant risk of

inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendant. For example, declaratory relief may be entered in multiple cases, but the ordered relief may vary, causing the Defendant to have to choose the court order with which it will comply.

42. **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of class members is unknown to Plaintiff at this time, it is believed that the Class is comprised of tens of thousands if not hundreds of thousands of members geographically dispersed throughout the United States. Affected consumer's names and addresses are available from Frontier's records, and class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include electronic mail, U.S. Mail, internet notice, and/or published notice.

43. **Predominance of Common Issues. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual class members. The common questions include:

    a.    Whether Defendant's conduct breaches its Contract of Carriage;

    b.    Whether Defendant is required to give a refund, rather than credit on a future flight when it cancels a flight and cannot reaccommodate the passengers within a reasonable time of the original flight schedule;

    c.    Whether Plaintiff and members of the Class are entitled to damages, costs, or attorneys' fees from Defendant; and

    d.    Whether Plaintiff and members of the Class are entitled to compensatory damages.

44. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of other Class members' claims because Plaintiff and Class members were subjected to the same unlawful conduct

and damaged in the same way. Defendant's conduct that gave rise to the claims of Plaintiff and other Class members (i.e., canceling flights without giving refunds in breach of the Contract of Carriage) is the same for all Class members.

45. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in litigating consumer claims. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of the Class.

46. **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs and class members may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class members are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Moreover, individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

47. **Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

Moreover, Defendant continues to offer credits instead of refunds to Plaintiff and Class members for flights that they cancel, thus making declaratory relief a live issue and appropriate to the Class as a whole.

### COUNT I - BREACH OF CONTRACT

48.    Plaintiff realleges and reincorporates its allegations in paragraphs 1 through 46 above as if fully set forth herein.

49.    This claim for breach of contract damages or, in the alternative, specific performance of the contract's refund terms, is based on Defendant's breaches of its Contract of Carriage (the "Contract").

50.    Plaintiff, along with all putative class members, entered into a Contract with Defendant for provision of air travel in exchange for payment. This Contract was drafted by Defendant.

51.    Plaintiff, and all putative class members performed under the Contract, specifically, by tendering payment for the airline tickets to Defendant and complied with all conditions precedent under the Contract.

52.    Due to Defendant's cancellation of their flights, Plaintiff, and all putative class members cannot use their airline tickets through no fault of their own and they are not getting the benefit of their bargain with Defendant.

53.    Under the terms of the Contract of Carriage drafted by Defendant, Plaintiff and putative class members are entitled to refunds because Frontier canceled their flights and did not reaccommodate and transport the customers to their destinations on another flight. Contract of Carriage § 18(a)(1). By failing to provide refunds, Frontier has breached its Contract of Carriage.

54.    As a result of Defendant's breaches of contract, Plaintiff and the putative class members have incurred damages in an amount to be proven at trial.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of all putative Class members, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

1.      For an Order determining at the earliest possible time that this matter may proceed as a class action under Rule 23 and certifying this case as such;

2.      For himself and each Class member their actual compensatory damages, or in the alternative, for specific performance of the refund provisions of the Contract of Carriage;

3.      For reasonable attorneys' fees and costs of suit;

4.      For pre-judgment interest; and

5.      Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff, on behalf of himself and the Class of all others similarly situated, hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: April 21, 2020                         Respectfully submitted,

                                              */s/ Hassan A. Zavareei*

                                              Hassan A. Zavareei (SBN 181547)
                                              **TYCKO & ZAVAREEI LLP**
                                              1828 L Street NW, Suite 1000
                                              Washington, D.C. 20036
                                              Telephone: (202) 973-0900
                                              Facsimile: (202) 973-0950
                                              Email: hzavareei@tzlegal.com

                                              Jeff Ostrow*
                                              Jonathan M. Streisfeld*
                                              Joshua R. Levine*
                                              Daniel Tropin*
                                              **KOPELOWITZ OSTROW**
                                              **FERGUSON WEISELBERG GILBERT**
                                              1 West Las Olas Blvd. Suite 500
                                              Fort Lauderdale, FL 33301
                                              Telephone: (954) 525-4100

CLASS ACTION COMPLAINT                                                          13

Facsimile: (954) 525-4300
Email:  streisfeld@kolawyers.com
        ostrow@kolawyers.com

Melissa S. Weiner*
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
Email:  mweiner@pswlaw.com

Daniel L. Warshaw (SBN 185365)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

*pro hac vice* application forthcoming

*Counsel for Plaintiff and the Proposed Class*

# EXHIBIT A

# FRONTIER AIRLINES Contract of Carriage

**Effective Date:**   04/16/20

For a summary of changes, <u>click here.</u>

# FRONTIER

**CONTRACT OF CARRIAGE** <span style="float:right">Rev 73 04/16/20</span>

## LIST OF EFFECTIVE PAGES

| REVISION NUMBER | **73** | REVISION DATE | 04/16/20 |
|---|---|---|---|

| Chapter/Page | Revision/Date |
|---|---|
| 00.00 Pg. 1 | Rev36 04/13/11 |
| 00.00 Pg. 2 | Rev36 04/13/11 |
| 00.00 Pg. 3 | Rev 73 04/16/20 |
| Pg. 1 | Rev 73 04/16/20 |
| Pg. 2 | Rev 73 04/16/20 |
| Pg. 3 | Rev 73 04/16/20 |
| Pg. 4 | Rev 73 04/16/20 |
| Pg. 5 | Rev 73 04/16/20 |
| Pg. 6 | Rev 73 04/16/20 |
| Pg. 7 | Rev 73 04/16/20 |
| Pg. 8 | Rev 73 04/16/20 |
| Pg. 9 | Rev 73 04/16/20 |
| Pg. 10 | Rev 73 04/16/20 |
| Pg. 11 | Rev 73 04/16/20 |
| Pg. 12 | Rev 73 04/16/20 |
| Pg. 13 | Rev 73 04/16/20 |
| Pg. 14 | Rev 73 04/16/20 |
| Pg. 15 | Rev 73 04/16/20 |
| Pg. 16 | Rev 73 04/16/20 |
| Pg. 17 | Rev 73 04/16/20 |
| Pg. 18 | Rev 73 04/16/20 |
| Pg. 19 | Rev 73 04/16/20 |
| Pg. 20 | Rev 73 04/16/20 |
| Pg. 21 | Rev 73 04/16/20 |
| Pg. 22 | Rev 73 04/16/20 |
| Pg. 23 | Rev 73 04/16/20 |
| Pg. 24 | Rev 73 04/16/20 |

# FRONTIER

**CONTRACT OF CARRIAGE**                                    Rev 73 04/16/20

| Table Of Contents |
| --- |

| Section | Subject | Page |
| --- | --- | --- |
| 1. | Introduction | 2 |
| 2. | Definitions | 2 |
| 3. | Refusal to Transport and Special Conditions | 3 |
| 4. | International Transportation | 6 |
| 5. | Child Passengers | 6 |
| 6. | Service Animals | 8 |
| 7. | Smoking | 9 |
| 8. | Tickets | 9 |
| 9. | Ticket Validity and Itinerary Changes | 10 |
| 10. | Check-in Times | 11 |
| 11. | Fares | 11 |
| 12. | Checked Baggage | 12 |
| 13. | Carry-On Baggage | 13 |
| 14. | Cabin-Seat Baggage | 14 |
| 15. | Conditions and Charges for Special Items | 14 |
| 16. | Limitations of Liability | 17 |
| 17. | Claim Limits and Procedures | 17 |
| 18. | Failure to Operate on Schedule or Failure to Carry | 19 |
| 19. | Denied Boarding Compensation | 20 |
| 20. | Refunds; No-Show Cancellations and Service Charges | 21 |
| 21. | Currency and Mode of Payment and Fees | 23 |
| 22. | Miscellaneous | 23 |

# FRONTIER

**CONTRACT OF CARRIAGE**

## 1.  Introduction

The following terms and conditions as well as such additional terms and conditions presented on Frontier Airlines' website, fare rules, published schedules or printed on or in any ticket or ticket-less travel authorization apply to all tickets issued for travel on flights operated by or for Frontier Airlines, Inc. ("Frontier") as well as that transportation regardless of whether such ticket was sold by Frontier or its authorized agents or whether such ticket is used ("Contract of Carriage").

This document is available for public inspection at all Frontier locations. Copies may be obtained by visiting the Frontier's web site at www.FlyFrontier.com or by writing to: Frontier Airlines, Inc., Customer Relations, 4545 Airport Way, Denver, CO 80239.

## 2.   Definitions

A. **Codeshare** – A marketing and business arrangement in which two airlines "share" the same flight (which might include connecting legs). One airline places its designator code and flight number on a flight operated by the other airline, and markets and sells tickets for that shared flight as part of its published schedule.

B. **Code** – The U.S. Internal Revenue Code of 1986, as amended.

C. **DOT** – U.S. Department of Transportation.

D. **FAA** – U.S. Federal Aviation Administration.

E. **Fare Rules** – The rules and requirements associated with a ticket.

F. **IATA** – International Air Transport Association.

G. **No-Show Cancellation** – The automatic cancellation of a passenger's ticket upon such passenger failing to either (i) check-in for such passenger's flight, or (ii) board such passenger's flight, in either instance within the required times. The automatic cancellation will apply to all subsequent flights, including return flights, on the itinerary. Presentation of a ticket by someone other than the named passenger renders the ticket void and the ticket will then be treated as a No-Show Cancellation for all purposes of this Contract of Carriage (see section 20. )

H. **Qualified Individual with a Disability** – An individual with a disability who: (i) has a physical or mental impairment that, on a permanent or temporary basis, substantially limits one or more major life activities; (ii) has a record of such an impairment; or, (iii) is regarded as having such an impairment, as further defined in 14 CFR 382.5.

I. **Standby Passenger** – A passenger boarded subject to availability of seat space at departure time and only after all passengers having confirmed reservations for the flight have been boarded.

J. **Stopover** – An intentional interruption in a passenger's trip in excess of 4 hours at a point between the place of departure and the final destination.

K. **STRETCH Seat** - A seat located in the front rows and exit rows of certain Frontier aircraft that have additional legroom. These seats are made available to passengers for a fee.

L. **Ticket** -The record of agreement, including electronic tickets, for passenger air transportation provided by the airline under certain terms and conditions to the passenger as described on the ticket, in the fare rules, and in this Contract of Carriage.

M. **TSA** – U.S. Transportation Security Administration.

---

**FRONTIER**

CONTRACT OF CARRIAGE                                    Rev 73 04/16/20

## 3.  Refusal to Transport and Special Conditions

A. Frontier may refuse to provide transportation to any person and may require that a passenger leave an aircraft or be removed from an aircraft for the following reasons, in which case Frontier will provide a refund of the amount paid for their ticket, which will be the limit of Frontier's liability.

  1)  Government Request – To comply with a government requisition of space or request for emergency transportation, e.g., in connection with national defense or natural disaster (actual, threatened or reported).

  2)  No Seat for Safety Assistant - If a passenger requires a safety assistant (see section 3. B.6) and there is not a seat available on the applicable flight and, thus, both the passenger and the safety assistant are denied transportation. For purposes of determining whether a seat is available for a safety assistant, the safety assistant is deemed to have checked in at the same time as the individual with the disability.

B. Frontier may refuse to provide transportation to any person and may require that a passenger leave an aircraft or be removed from an aircraft for the following reasons, in which case no refund will be due and Frontier will have no further liability.

  1)  Government Direction - To comply with a direction of a government official acting in their official capacity to remove or not provide transportation to a specific individual.

  2)  Identification – The passenger refuses to produce a government-issued identification as required by Frontier's representatives or as required by law.

  3)  Passports/Visas – The passenger intending to travel across any international border fails to possess and present all valid documents (passports, visas, certificates, etc.) required by the laws of the countries from, over or into which the passenger will fly, which will in all cases be the passenger's exclusive responsibility.

  4)  Failure to Check In or Appear - The passenger fails to check-in for their flight within the required times or appear for boarding of that flight within the required times. (The ticket will be deemed to be a No-Show Cancellation (see Section 2.G) and canceled. All subsequent flights, including return flights, on the itinerary will also be treated as No-Show Cancellations (see Section 20)).

  5)  Special Medical Requirements – The passenger will be refused transport if he or she requires medical equipment be used in flight or services (i) not provided by Frontier, (ii) that may not be used in flight, or (iii) does not have sufficient supplies therefor. The foregoing includes any medical equipment that would require use of power from the aircraft, medical equipment for which the passenger does not have sufficient batteries for the duration of the flight plus unexpected delays. Passengers must be able to sit in a single seat with the seat in the full and upright position, which precludes passengers that must lie flat or that must be transported on a stretcher. Frontier does not provide medical oxygen.

     EXCEPTION:   A respiratory device (e.g., ventilator, respirator, CPAP machine or Portable Oxygen Concentrator) is considered an assistive device and is permitted as carry-on or checked baggage at no charge provided that all batteries must be transported in carry-on baggage and must be packaged in a manner that protects them from physical damage and short circuits, and provided that if the device is to be used in flight: (i) the passenger must carry enough fully-charged batteries to power the device throughout the entire journey including all ground time (between connections), the duration of the flight and for unexpected delays, (ii) the device must be approved by the FAA with stickers indicating such, and (iii) prior to traveling, the passenger must complete the Portable Oxygen Concentrator Medical Authorization form (30881) available on Frontier's website or obtain a medical statement from his/her physician addressing the points on the POC Medical Authorization form.

**FRONTIER**

**CONTRACT OF CARRIAGE**                                                  Rev 73 04/16/20

NOTE:    Passengers are referred to 14 CFR Part 121, SFAR No. 106 for regulations regarding and a list of Portable Oxygen Concentrators that are approved for use on aircraft.

6)  Qualified Individual with a Disability – If transportation is refused because the passenger fails to comply with the following: Qualified individuals with a disability will be transported in accordance with the conditions and requirements of 14 C.F.R. § 382 unless the carriage of such individuals may impair the safety of the flight or violate Federal Aviation Regulations. Pursuant to 14 C.F.R. § 382.113, Frontier does not provide certain extensive in flight special services such as assistance in actual eating, assistance within the lavatory or at the individual's seat with elimination functions, or provision of medical services. Moreover, pursuant to 14 C.F.R. § 382.29, a qualified individual with a disability may be required to be accompanied by a safety assistant as a condition of being provided air transportation in any of the following circumstances: (i) when the individual, because of a mental disability, is unable to comprehend or respond appropriately to safety instructions from employees, including the required safety briefing, (ii) when the individual has a mobility impairment so severe that the individual is unable to assist in his/her own evacuation of the aircraft, (iii) when the individual has both severe hearing and severe vision impairments, if the individual cannot establish some means of communication with employees adequate to permit transmission of the required safety briefing, (iv) on the day of departure, if it is determined that an individual meeting the criteria of (i), (ii) or (iii) must travel with a safety assistant, contrary to the individual's self-assessment that he/she is capable of traveling independently, the safety assistant will not be charged to accompany the individual with a disability.

7)  Prisoners - If transportation is refused because of a failure to comply with the following: Frontier accepts up to two "low risk" prisoners with hand restraints per flight. If the flight is 4 hours or less, at least one armed or unarmed law enforcement officer must accompany the prisoner(s). If the flight is more than 4 hours, at least two armed or unarmed law enforcement officers must accompany the prisoner(s). At no time may any prisoner be left unattended. No prisoners are accepted on codeshare itineraries.

8)  Resistant Prisoners - Any prisoner who has resisted or is reasonably believed to be capable of resisting his/her escort.

9)  Proper Attire - Any passenger who is barefoot and over 5 years of age, unless required to be barefoot for medical reasons, or who is not otherwise fully clothed.

10) Intoxication - Any passenger who appears to be intoxicated or under the influence of drugs.

11) Communicable Disease or Infection - A passenger who has a communicable disease or infection that is known or reasonably believed to pose a direct threat to the health or safety of others in the course of flight. If such a passenger presents a medical certificate dated within 10 days of the date of the flight for which it is being presented with specific conditions under which the individual can travel and not pose a direct threat to the health and safety of other persons, transportation will be provided to such individual unless it is not reasonable or feasible to implement the conditions set forth in the medical certificate as necessary to prevent the transmission of the disease or infection to other persons in the normal course of flight. Unacceptable measures will include, but not be limited to, a required separation between the passenger and other persons, use of medical equipment not permitted to be used on the aircraft, a requirement that any person wear protective gear including gloves.

12) Refusal or Inability to Sit - Any passenger who is unwilling or unable to sit in an upright position during takeoff and landing with the seat belt fastened.

13) Failure to Follow Instructions - Any passenger who refuses to obey instructions from an employee or crewmember.

Case: 2:20-cv-00165-DLB-CJS   Doc #: 5-6   Filed: 11/25/20   Page: 23 of 50 - Page ID#:
149
Case 2:20-at-00395   Document 1-1   Filed 04/21/20   Page 8 of 28

# FRONTIER

**CONTRACT OF CARRIAGE**                                              Rev 73 04/16/20

14) Use of Ticket Issued to Other Person - Any passenger who attempts to use a ticket not issued to that person. (This ticket will be deemed to be a No-Show Cancellation (see Section 2.G) and canceled. All subsequent flights, including return flights, on the itinerary will also be treated as No-Show Cancellations (see Section 20)).

15) Interference - Any passenger who interferes with any member of the flight crew in pursuit of their duties or attempts to do so.

16) Smoking - Any passenger who smokes or attempts to smoke on an aircraft.

17) Weapon - Any passenger who, except as permitted by law (see 49 C.F.R. § 1544.219), wears or has on or about their persons concealed or unconcealed, deadly or dangerous weapons.

18) Purchase in Violation of Contract of Carriage - Any passenger that purchases a ticket in violation of this Contract of Carriage or any fare rule. In addition, Frontier may (i) invalidate the tickets or any other that may have been purchased in the same manner, (ii) cancel any remaining portion of the passenger's itinerary, or (iii) confiscate any unused portions of the ticket.

19) General Refusal - Any person whom Frontier has informed is not permitted to purchase transportation from Frontier.

C. Refusal to Sell Transportation - Frontier may refuse to sell transportation to any person, including the following, and may inform such persons that they are not permitted to purchase transportation from Frontier:

   1) Refusal to Comply - A person who refuses to comply with instruction given by employees or representatives prohibiting the solicitation of items for sale or purchase, including airline tickets, passes, or travel award certificates.

   2) Prior Conduct - A person who has disrupted airline operations, mistreated employees, or has not complied with Frontier's policies or otherwise violates this Contract of Carriage.

   3) Misconduct - A person who has committed a fraudulent act against Frontier.

D. Customer of Size - If, in Frontier's sole judgment, a passenger is unable to sit in an aircraft seat without lifting either or both armrests and occupying all or a portion of the adjacent seat(s), or encroaching into the aisle or adjacent seat(s), the passenger will be required to purchase a ticket for an additional seat (or more, if required to accommodate the passenger) at the price then applicable. If sufficient, contiguous seats are not available, the passenger will be given the option to switch to flights on which such seats are available (for which applicable fees will apply) or be given a refund.

E. Allergies (Peanut, Pet, or Chemical) - Items are not removed from the aircraft to accommodate a passenger's allergy to a particular food, substance, or chemical. A variety of snacks are served on board many flights, including products that may contain peanuts or other nuts. A "peanut-free" or "chemical-free" environment cannot be provided to passengers onboard the aircraft. Passengers are advised to consult a healthcare professional regarding the risks of onboard exposure to any allergen.

F. Pregnancy - Passengers who are pregnant are urged to consult with their doctor on whether it is safe to travel by air, including with due consideration to the possibility of turbulence, cabin pressurization, significantly increased risk of deep vein thrombosis associated with pregnancy, and lack of ready access to medical care. This is particularly important for women in their ninth month of pregnancy, who are urged to obtain an examination from their physician shortly before flying to confirm air travel will be safe. Women with a history of complications or premature delivery should not fly if pregnant. By traveling with Frontier, pregnant women acknowledge and accept these risks.Different policies for passengers who are pregnant may apply on any leg of a codeshare flight that is operated by the codeshare airline.

**FRONTIER**

**CONTRACT OF CARRIAGE**                                          Rev 73 04/16/20

G. Electronic Surveillance of Passengers and Baggage - Passengers and their baggage are subject to inspection, including via electronic means, with or without the passenger's consent or knowledge.

H. Diversion - In the event that Frontier is required to divert an aircraft because a passenger requires medical attention or due to the passenger's conduct, the passenger may be required to reimburse Frontier for the costs that Frontier incurs, including the cost to accommodate other passengers. The amount due will be as determined by Frontier.

## 4.   International Transportation

A. Compliance with Regulations - Passengers shall comply with all laws, regulations, orders, demands, or travel requirements of countries to be flown from, into, or over. Frontier is not liable for any aid or information given by any agent or employee to any passenger in connection with obtaining necessary documents or complying therewith (including as may be provided in this Contract of Carriage) or the consequences to any passenger resulting from his/her failure to obtain such documents or to comply with such laws, regulations, orders, demands, requirements, or instructions.

B. Compliance with Foreign Country Regulations regarding Importation of Goods - Passengers shall comply with all laws, regulations, orders, demands, or travel requirements of countries to be flown from, into, or over. Frontier is not liable for the consequences to any passenger resulting from his/her failure to comply with such laws, regulations, orders, demands, requirements, or instructions.

C. Customs Inspection - If required, a passenger must attend the inspection of his/her baggage, checked or unchecked, by customs or other government officials. Frontier accepts no responsibility to the passenger if they fail to observe this condition.

D. Government Regulation - No liability shall attach to Frontier if, based on what it understands to be applicable law, government regulation, demand, order or requirement, it refuses to carry passenger. If, however, it is ultimately determined that Frontier was incorrect, the limit of its liability will be to refund the amount paid for the ticket on which transportation was refused.

E. International Operations - Frontier is required to make an attempt to obtain emergency contact information from a passenger traveling into or out of a foreign country. If a passenger refuses to provide emergency contact information, Frontier will document the attempt and may require the passenger to sign the document.

F. Indemnification - A passenger shall indemnify Frontier for any loss, damage, or expense suffered or incurred by Frontier by reason of the passenger's failure to possess any required travel documents or other failure to comply with the provisions of this section, including the applicable fare if Frontier is required to transport the passenger home from a country. Frontier is not liable to the passenger for loss or expense due to the passenger's failure to comply with this provision.

G. Baggage Limitation - Passengers shall comply with all laws, regulations, orders, demands, or travel requirements regarding baggage size and weight limitations of countries to be flown from, into, or over. Frontier is not liable for the consequences to any passenger resulting from his/her failure to comply with such laws, regulations, orders, demands, requirements, or instructions.

## 5.   Child Passengers

A. Accompanied Children – Children from 7 days through 14 years of age may travel with another passenger who is at least 15 years old.

**FRONTIER**

CONTRACT OF CARRIAGE                                                    Rev 73 04/16/20

B. Unaccompanied Children

  1) Frontier does not allow children under the age of 15 years old to travel unaccompanied; they must be accompanied by a passenger who is at least 15 years old. Passengers who are 15 years old or older may travel on Frontier without an adult companion. A birth certificate, official school ID, or other form of ID may be requested for age verification purposes if the child's age appears questionable.

   NOTE:     *Passengers under age 18 traveling without both parents may need additional documentation to travel across international borders, depending on the country's requirements.*

C. Infant and Child Fares (except as otherwise provided in a specific fare rule) are as follows:

  1) Infants under 2 years of age are accepted, without charge, when the infant does not occupy a separate seat and is accompanied by a fare-paying passenger at least 15 years old. A birth certificate may be requested for age verification purposes if the infant's age appears questionable.

   NOTE:     *Due to supplemental equipment considerations, the number of infants accepted per flight may be limited based on aircraft type.*

  2) One adult may accompany up to two infants under the age of 2.

   a) When an adult passenger is traveling with two infants under 2 years of age, a seat must be purchased for at least one infant. The fare is the same as an adult fare.

  3) Children 7 days - 14 years of age occupying a seat are charged the same fare as an adult passenger.

   NOTE:     *Passengers under age 2 traveling as lap children (not purchasing a seat) are subject to international taxes. These taxes must be paid prior to boarding the originating departure flight.*

D. Child Restraint Systems - Frontier accepts infant and child restraint systems (car seat or harness) approved for air travel that fit in the applicable aircraft seat with the arm rest down that meet the following requirements:

  1) Approved seats manufactured to U.S. standards between January 1, 1981, and February 25, 1985, must bear the label: "This child restraint system conforms to all applicable Federal motor vehicle safety standards."

  2) Seats manufactured to U.S. standards on or after February 26, 1985, must bear two labels: (i) "This child restraint system conforms to all applicable Federal motor vehicle safety standards" and (ii) "THIS RESTRAINT IS CERTIFIED FOR USE IN MOTOR VEHICLES AND AIRCRAFT" in red lettering.

  3) Seats not meeting the above criteria must bear a label or markings showing: (i) the seat was approved by a foreign government, (ii) the seat was manufactured under the standards of the United Nations, (iii) the seat or child restraint device furnished by the certificate holder was approved by the FAA through Type Certificate or Supplemental Type Certificate, or (iv) the seat or child restraint device was approved by the FAA in accordance with 14 C.F.R § 21.8(d), or FAA Technical Standard Order C-100b, or a later version.

   NOTE 1:   *A child under the age of 2 must be held in the passenger's lap or be seated in an approved car seat for taxi, takeoff, and landing.*

   NOTE 2:   *Frontier encourages all adults traveling with infants under 2 years of age to secure the infant in an approved car seat or harness in the infant's own purchased seat.*

  4) Child Harness - The FAA-approved AMSafe Aviation C.A.R.E.S. child harness device may be used on-board the aircraft. It is designed for children weighing between 22 and 44 pounds (between 10 and 20 kilograms) and must bear the label "FAA Approved in accordance with 14 CFR 21.305(d) approved for aircraft use only."

**FRONTIER**

CONTRACT OF CARRIAGE                                                    Rev 73 04/16/20

5) Car Seats - A car seat may be used by a child between the ages of 7 days and 2 years if seat space is available after boarding, even if a seat has not been purchased for the child. A car seat may be used by any child when a separate seat has been purchased. To use a car seat onboard the aircraft:

   a) It must bear manufacturer labels identifying approval for aircraft use, as described in subsection (1) and (2) above.

   b) It must have a solid seat and solid back.

   c) It must have restraint straps installed to hold the child in the car seat.

   d) The child may not exceed the weight limitation of the car seat.

   e) It may not be placed in the emergency exit rows, in the seats immediately in front of or behind the exit rows, or in any seat that has an airbag seatbelt installed.

   f) Window seats are the preferred location for a car seat, so it does not impede a passenger's movement or egress into the aisle. Other seat assignments are permitted provided the car seat is not obstructing the egress of any passenger.

   g) It must be secured by a seat belt at all times.

6) Booster Seats - Booster seats may be carried on-board aircraft but must be stowed in an overhead compartment or underneath the seat for take-off and landing. Once the aircraft has reached cruising altitude, the passenger may use the seat during the flight. The booster seat must be stowed when the aircraft begins its descent.

# 6.  Service Animals

A. General - The following categories of service animals are allowed in the cabin without charge.

1) Trained service animals assist passengers with disabilities. As evidence that an animal is a trained service animal, the passenger must present an identification card or other written documentation, the animal must have a harness, tag, or the passenger must give credible verbal assurances that he/she is a qualified individual with a disability using the animal. Only dogs, cats or miniature horses will be accepted as trained service animals. The animal must be at least 4 months old. The passenger is required to keep the animal under control at all times, with the animal on a leash or harness while in the boarding area and onboard the aircraft. Psychiatric support animals are recognized as trained service animals.

2) Emotional support animals provide support for passengers with mental health-related disabilities. Only dogs or cats, at least 4 months old, will be accepted as an emotional support animal. Only one emotional support animal per passenger will be allowed. The passenger must keep the animal under control at all times, with the animal on a leash, harness or in a carrier while in the boarding area and onboard the aircraft. As evidence that the animal is required for that purpose, the passenger must present:

   a. A Frontier Medical/Mental Health Professional Information form completed by a mental health professional (e.g., psychiatrist, psychologist, licensed clinical social worker, including a medical doctor specifically treating the passenger's mental or emotional disability) stating the following:

   (i) the passenger has a mental or emotional disability recognized in the Diagnostic and Statistical Manual of Mental Disorders — Fourth Edition (DSM IV),

   (ii) the passenger needs the emotional support animal as an accommodation for air travel or for activity at the passenger's destination,

**FRONTIER**

**CONTRACT OF CARRIAGE**                                              Rev 73 04/16/20

(iii) the individual providing the assessment is a licensed mental health professional, and the passenger is under his or her professional care, and

(iv) The date and type of the mental health professional's license and the state or other jurisdiction in which it was issued.

b.   A Frontier Veterinary Health Form completed and signed by Veterinary Professional indicating the following:

(i) Rabies Vaccine Given (date)

(ii) Rabies Vaccine Valid Through (date)

(iii) Veterinarian License number

(iv) Date Veterinarian License Issued

(v) State License Issued In

(vi) Name of Practice

(vii) Phone

c.   A Frontier Passenger Acknowledgment form completed and signed by the passenger.

These forms must be completed and submitted 48 hours prior to departure.

3) Service Animals trained in explosive detection, contraband search, or search and rescue on active duty and traveling for that purpose will be accepted for travel. The passenger must present credible documentation the animal is traveling for that purpose.

B. Seating - The passenger may sit anywhere, except in an emergency exit row, provided the animal does not obstruct an aisle or egress of passengers in an emergency evacuation. The animal must fit under the seat or on the passenger's lap. If the passenger is seated in row 1, the animal will not be allowed on the passenger's lap. The animal may not occupy a seat. An animal that cannot or does not comply with the foregoing will not be accepted.

C. International - Restrictions for travel with an animal to international destinations vary by country. Frontier recommends contacting the appropriate embassy or consulate before purchasing a ticket for travel with a service animal or emotional support animal. Different policies may apply on any leg of a codeshare flight that is operated by the codeshare airline.

D. Oxygen - No oxygen will be administered to a service animal in the event of an emergency.

# 7.   Smoking

A. Smoking is prohibited on all flights.

B. Federal law prohibits tampering with, disabling, or destroying any smoke detector installed in an aircraft lavatory.

C. The use of electronic smoking devices is prohibited at all times on all aircraft.

# 8.   Tickets

A. A passenger is entitled to transportation only upon presentation of a valid electronic ticket (e-ticket). The ticket entitles the passenger to transportation between the point of origin and the destination.

**FRONTIER**

**CONTRACT OF CARRIAGE**                                                    Rev 73 04/16/20

NOTE:    *Paper tickets are not issued on Frontier ticket stock. Only electronic tickets are issued for travel on Frontier. However, paper tickets from other airlines may be accepted for travel at Frontier's discretion.*

B. Tickets are honored only in the order in which they are issued.

C. The following practices are prohibited:

1) Back to Back Ticketing – The purchase or use of portions of tickets from two or more tickets issued as round-trip fares or other scheme for circumventing minimum stay requirements.

2) Throwaway Ticketing – The purchase or use of round-trip tickets for one-way travel.

3) Hidden City/Point Beyond Ticketing – The purchase or use of a ticket from a point before the passenger's actual origin or to a point beyond the passenger's actual destination.

D. A ticket which has not been properly issued or paid for, or which has been altered, mutilated, or improperly issued by an unauthorized party is not valid for travel or refund.

E. The purchaser of a ticket and the passenger intending to use it are responsible for ensuring that the ticket accurately states the name of the passenger.

F. A ticket may only be used by the person named on the ticket. Frontier is not liable to the purchaser of a ticket if the ticket is used by someone other than the person named on the ticket.

G. Presentation of a ticket by someone other than the named passenger renders the ticket void. The ticket is subject to confiscation, and the ticket will then be treated as a No-Show Cancellation for all purposes of this Contract of Carriage (see section 20. )

H. An additional processing fee will apply to each ticket purchased or changed via Frontier's reservation center or at its airport counters, except (i) tickets purchased by an Elite member for themselves (a fee does apply to purchases by such members for others), and (ii) issuing an international ticket for infant taxes for an infant not occupying a seat.

## 9.   Ticket Validity and Itinerary Changes

A. Period of Validity

1) Tickets issued by Frontier are valid for transportation only on the flights and dates shown on the ticket and have no value and are not valid for transportation thereafter. If a passenger cancels a ticket before the scheduled flight departure time, the value of the ticket less a service fee will be retained for 90 days from the date of cancellation of the ticket in the form of an electronic credit. The credit has no cash or refund value and may only be applied to a single subsequent ticket on a Frontier flight for the same passenger as the original ticket. In the case of a No-Show Cancellation, see section 20.

2) Except as required by law or as provided in this Contract of Carriage, Frontier shall have no obligation of any kind to reschedule any passenger(s) who cancels a ticket before the scheduled flight departure time or to provide them with any refund or other credit for unused tickets.

3) Except as required by law or as provided in this Contract of Carriage, in the case of a No-Show Cancellation, Frontier shall have no obligation of any kind to reschedule any such passenger(s) on any other flight, and the rules respecting No-Show Cancellations shall apply (see section 20. )

B. Except for tickets purchased for travel within 7 days (168 hours) of purchase, all tickets may be canceled within twenty-four (24) hours of the purchase and a full refund will be given. After that time, except for tickets that are purchased as refundable, all tickets are non-refundable.

**FRONTIER**

| CONTRACT OF CARRIAGE | Rev 73 04/16/20 |

## 10. Check-in Times

A. Airport Check-In - It is the passenger's responsibility to arrive at the airport, taking into consideration travel time both to and within the applicable airport, including processing through the security check point with enough time to complete check-in and security screening processes.

B. Passengers can check in beginning 2 hours before departure at Frontier's airport check-in counters or 24 hours before departure at www.FlyFrontier.com or on the Frontier mobile app, if the reservation is eligible for online or mobile app check-in.

C. Check-In Times

   1) For domestic flights (originating and to a destination within the United States), the passenger must be checked in with a printed boarding pass or a Frontier mobile app boarding pass in-hand at least 45 minutes prior to scheduled departure whether or not checking bags.

   2) For international flights, the passenger must be checked in with a printed boarding pass or a Frontier mobile app boarding pass in-hand at least 60 minutes prior to scheduled departure.

D. Time Limit for Checking Bags - Baggage to be checked must be presented at the airport within the minimum check-in time. Passengers who present baggage after the minimum check-in time may be refused transport. At some airports, the counter may close at the check-in cut-off time, in such cases, passenger and baggage check-in are not permitted after the check-in deadline. In the event that baggage is accepted after the minimum check-in time, the passenger will be liable for any costs and fees for the bag to be delivered in the event that it is not carried on the same flight.

E. Availability for Boarding - Tickets and seat assignments are subject to cancellation for passengers who fail to make themselves available for boarding at the departure gate at least 20 minutes prior to scheduled departure.

F. Failure to Check In or Appear - If a passenger fails to check in or board the flight within the required time, the ticket will be deemed to be a No-Show Cancellation (see Section 2.G) and canceled. All subsequent flights, including return flights, on the itinerary will also be treated as No-Show Cancellations (see Section 20).

G. Misconnected Passengers - The ticket of any passenger who does not meet the minimum check-in time due to the late arrival of an inbound connecting flight operating by Frontier will be accommodated on the next available flight operated by Frontier to the same destination. Frontier will not provide transportation on another airline or reimburse the cost of transportation purchased from another airline. The ticket of any passenger who does not meet the minimum check-in time due to the late arrival of an inbound connecting flight operated by any other airline will be canceled and no refund or accommodation on another flight will be due unless available and purchased at the applicable price by the passenger.

## 11. Fares

A. Fares apply for transportation only between the airports for which they are published.

B. When a passenger requires connecting service with arrival at one airport and departure from another airport, transportation between those airports must be arranged by and at the expense of the passenger.

C. Fares are subject to change without notice until a ticket is issued.

# FRONTIER

**CONTRACT OF CARRIAGE**                                                    Rev 73 04/16/20

## 12. Checked Baggage

A. Fees applicable to checked baggage:

   1) Baggage fees apply to each checked bag.

   2) Active U.S. military personnel, with Common Access Card (CAC), may check two bags at no charge for all types of tickets. Overweight and/or oversize charges for the first two free bags are also waived. This policy is for active U.S. military personnel only and does not extend to family members or traveling companions.

B. Baggage Allowance Exceptions - The following may be checked or carried on at no charge and do not count toward the passenger's baggage allowance.

   1) Medical Assistive Devices - Canes, crutches, braces, wheelchairs, etc. for the use of the passenger. There is no limit to the number of mobility aids a passenger may check. Medical assistive devices must be packed separately, in protective packaging, for baggage fees to be waived.

   2) Wheelchairs - In compliance with federal law, wheelchairs or other types of mobility devices for the passenger are accepted as checked baggage in addition to the passenger's baggage allowance at no additional charge. Certain Frontier aircraft can accommodate up to two wheelchairs up to 40 inches (101 cm) high, 50 inches (127 cm) long, 13 inches (33 cm) wide and weighing no more than 70 pounds (31 kilograms) in the cabin of the aircraft on a first-come, first-served basis. Wheelchairs carried in the cabin of the aircraft will be brought to the front of the aircraft after all other passengers have deplaned.

   3) Essential Infant or Child Items - Child restraint devices, car seats, strollers, diaper bags, and other essential baby items when the infant is traveling. These items must be packed separately, in protective packaging, for baggage fees to be waived.

C. Acceptable Baggage - Frontier will accept for transportation as baggage such personal property necessary or appropriate for the wear, use, comfort, or convenience of the passenger for the purpose of the trip, subject to the following:

   1) Checked baggage may not exceed 62 inches (157 cm) in linear dimension (height plus length plus width), nor more than 180 inches (457 cm) in any of those dimensions or weigh more than 50 pounds (22.6 kilograms). Additional fees apply to items that exceed those size and weight limitations. Baggage weighing 100 or more pounds (45 kilograms) is not accepted.

*NOTE 1:*      *For baggage checked to or from Canada, no baggage weighing more than 70 pounds (31.75 kilograms) will be accepted.*

   2) The TSA website maintains a list of items that passengers are not permitted to check in baggage. See www.tsa.gov for a complete list. Baggage containing any items on that list will not be accepted.

   3) An item for transportation not suitably packaged to withstand ordinary handling and turbulence, or of a size, weight or character that renders it unsuitable for transportation will not be accepted.

   4) The passenger is responsible for ensuring that all items packed in checked baggage are properly packaged and padded to resist handling and turbulence. (Refer to section 17. )

   5) All baggage is subject to inspection by Frontier. Frontier is not, however, obligated to perform an inspection. Frontier will refuse to transport or will remove baggage if the passenger refuses to submit the baggage for inspection.

   6) Frontier will not accept baggage or other personal property for storage.

**FRONTIER**

CONTRACT OF CARRIAGE                                                    Rev 73 04/16/20

7) Frontier will check baggage only when the passenger presents a valid ticket for transportation on the applicable flight.

8) The passenger's name, address and telephone number must appear on the baggage.

9) Frontier has the right to refuse to transport baggage on any flight other than the one carrying the passenger.

10) Baggage will not be checked:

   a) To a point that is not reflected on the passenger's ticket.

   b) Other than the passenger's destination on the applicable flight, but if the flight is a connecting flight, to the final destination, but if that connecting flight is scheduled to depart from an airport different from the one at which the passenger is scheduled to arrive then only to the destination of the first leg.

11) Live animals are not accepted as checked baggage.

12) Agricultural items, perishable items, or products that do not conform with customs or agricultural government law at the flight's destination will not be accepted.

13) Frontier will not accept for carriage any restricted/hazardous materials as defined in the DOT Hazardous Materials Regulations (49 C.F.R. §§ 171-177) and IATA Dangerous Goods Regulations. Examples of such goods are (i) liquor products over 140 proof, (ii) gasoline-powered tools, (iii) compressed gases, (iv) corrosives (such as acids and wet batteries), (v) explosives (such as dynamite and fireworks), (vi) flammables (such as matches and lighter fuels), (vii) poisons, and (viii) magnetic and radioactive materials. Electronic smoking devices (commonly referred to as e-cigarettes or personal vaporizers) pose a safety risk and are not permitted in checked baggage. These items are permitted in carry-on baggage. Spare lithium batteries are not allowed in checked baggage.

14) Perishable items must be packaged properly such that they cannot leak through their packaging. (Refer to section 17. )

D. Codeshare Flights – The baggage policy of the airline on which a passenger originally booked the codeshare flight will apply to the entire itinerary.

# 13. Carry-On Baggage

A. Passengers are permitted up to two carry-on items:

   1) One free personal item not larger than 8" x 14" x 18" (20 cm x 35 cm x 45 cm) that must fit within the personal item portion of the bag sizer.

   2) One carry-on item not larger than 10"H x 16"W x 24"L (25 cm x 40 cm x 114 cm) and weighing not more than 35 pounds (15 kilograms) that may be placed in the overhead compartment or under the seat. A fee for the carry-on item may apply based on the ticket type purchased. Active U.S. military personnel, with Common Access Card (CAC), may take a carry-on item free of charge for all types of tickets.

   3) Items that exceed these dimensions or are in excess of the allowance will be gate checked to which a fee will apply.

B. The TSA website maintains a list of items that passengers are not permitted to carry onboard an aircraft. See www.tsa.gov for a complete list. Carry-on items containing any items on that list will not be accepted.

C. The passenger is responsible for all items brought on board the aircraft. Items must be stored under a seat or in the overhead compartment.

**FRONTIER**

D. Use of Portable Electronic Devices (PEDs)

   1) Small authorized PEDs are devices under 2 pounds and are of a size that can easily be placed in a seat pocket along with the other materials that are normally found in the seat pocket (Passenger Safety Information Card, Menu or airsickness bag). They include devices like tablets, readers and mobile phones and may be used during all phases of flight when in airplane mode including taxi, take-off and landing. However, if using them during taxi, take-off and landing, you must secure these devices by holding them, putting them in your pocket or holster, or placing them in a seatback pocket.

   2) Large authorized PEDs are devices 2 pounds or more such as full-size laptops. They must be turned off and stowed during taxi, takeoff and landing. You may stow them under the seat in front of you or in an overhead compartment. These devices may be used above 10,000 feet when authorized by a Flight Attendant announcement.

   3) On all flights operating outside U.S. airspace, PEDs cannot be used during taxi, takeoff and landing, but may be used in airplane mode above 10,000 feet when authorized by a Flight Attendant announcement.

E. Sound Emitting Devices - Portable electronic devices that emit sound, e.g., music or video players or games, may be used only with headphones and provided the sound, even via the headphones, cannot be heard by others.

F. Codeshare Flights – The baggage policy of the airline on which a passenger originally booked the codeshare flight will apply to the entire itinerary.

## 14. Cabin-Seat Baggage

A. Cargo stowed inside the main cabin of the aircraft and occupying a passenger seat is referred to as "Cabin-Seat Baggage." Cabin-Seat Baggage may be transported on flights operated by Frontier subject to the following conditions:

   1) The full fare for the ticket for the applicable seat is paid. There is no carry-on baggage allowance or baggage allowance for that ticket. If the Cabin-Seat Baggage must be accommodated into a STRETCH seat due to its size or at the passenger's request, the STRETCH seat fee applies.

   2) The Cabin-Seat Baggage must be packaged or covered in a manner to avoid possible injury to passengers and crew.

   3) The Cabin-Seat Baggage must be carried aboard the aircraft by the passenger.

   4) The Cabin-Seat Baggage may not weigh more than 100 pounds (45 kilograms).

   5) The Cabin-Seat Baggage cannot exceed size dimensions of 57" height x 17.84" width x 9.3" depth (144.78 cm x 45.31 cm x 23.62 cm).

   6) The Cabin-Seat Baggage must fit in the seat without blocking aircraft signage or extending into the aisle and be secured with a seatbelt or other approved method.

   7) Certain seats may not accommodate Cabin-Seat Baggage. Frontier will assign seats as appropriate.

   8) Except as provided herein, Frontier is not responsible for damage to Cabin-Seat Baggage.

   9) Cabin-Seat Baggage does not count toward the passenger's baggage allowance.

## 15. Conditions and Charges for Special Items

The following items are accepted as checked or carry-on baggage, subject to the conditions specified and payment of applicable fees.

# FRONTIER

**CONTRACT OF CARRIAGE**                                         Rev 73 04/16/20

NOTE:   Refer to the Sports Equipment and Special/Fragile Items chart hosted at www.FlyFrontier.com for other items which have specific packaging or other requirements which need to be met in order to be transported by air. All items listed on the Sports Equipment and Special/Fragile Items chart are subject to baggage fees. Baggage fees for excess, oversize, and overweight are cumulative and all may be assessed on one item.

A. Firearms – Firearms are accepted as checked baggage on flights within the United States, but not international flights. Carriage of any firearm is subject to the following conditions:

   1) In accordance with federal law, a passenger who presents baggage that contains a firearm must (i) ensure the firearm is unloaded, (ii) pack the firearm in a lockable, hard-sided container, (iii) declare the firearm unloaded at the time of check-in, and (iv) sign a "Firearms Unloaded" declaration.

   2) If the firearm is in a locked, hard-sided container INSIDE a piece of checked baggage, the declaration must be placed inside the checked baggage and proximate to, but not inside of, that container.

   3) If the firearm is in a locked, hard-sided container, but NOT INSIDE a piece of checked baggage, the declaration must be placed inside the container.

   4) After screening, the passenger must lock the firearm container and retain the key or combination.

   5) The passenger must make arrangements for and assume full responsibility for complying with any applicable laws, customs and government regulations, or restrictions of the state or territory to which the firearm is being transported.

B. Ammunition - Ammunition for firearms (whether or not the firearm is also being carried) is accepted as checked baggage on flights within the United States, but not international flights, subject to the following conditions:

   1) The ammunition must be securely packed in the original manufacturer's packaging, fiber (such as cardboard), wood or metal boxes or other sturdy and durable packaging providing sufficient cartridge separation.

   2) Each passenger is allowed up to 11 pounds (4.9 kilograms) of ammunition.

   3) Loaded ammunition clips and magazines must also be securely boxed.

   4) Ammunition may be packed with the firearm.

C. Live Animals – Frontier accepts live animals only in the cabin of the aircraft, not as checked baggage. The transportation of live animals is subject to fees for carriage and the terms and conditions below.

   EXCEPTION:  See separate rules with respect to service animals referred to in *6. Service Animals*.

   1) Only the following animals are permitted:

      a) Domestic Flights – Domesticated dogs, cats, rabbits, guinea pigs, hamsters, or small household birds.

      b) International Flights – Domesticated dogs and cats.

   2) The passengers carrying the animal are responsible for making arrangements and assuming full responsibility for complying with any applicable laws, customs and other governmental regulations, requirements or restrictions of the country, state or territory to which the animal is being transported.

   3) The passengers carrying the animal are responsible for paying any import/export fees, duties or taxes that may apply as well as any fines for failing to comply with applicable law.

   4) International - Restrictions for travel with an animal to international destinations vary by country. Frontier recommends contacting the appropriate embassy or consulate before purchasing a ticket for travel.

**FRONTIER**

**CONTRACT OF CARRIAGE**                                    Rev 73 04/16/20

5) The passengers carrying the animal are responsible for making advance reservations because no more than ten pet containers will be accepted per flight.

6) No passenger may carry more than one pet container.

7) The animal must remain in a pet container at all times and may not be fed while onboard the aircraft.

8) The pet container must be large enough for the pet to stand, turn around, and lie down in a natural position and fit underneath the seat in front of the passenger.

9) The animal may not disrupt other passengers and the passenger must be able to quiet the animal without removing it from the container.

10) The container counts toward the carry-on baggage allowance.

11) No oxygen will be administered to an animal in the event of an emergency.

D. Human Remains:

1) Crematory remains (human or animal) may be transported as carry-on or checked baggage subject to the following conditions:

    a) The container must be made of a material such as wood or plastic that can be successfully screened by the TSA. If the container cannot be screened, it will not be allowed.

    b) If the container is checked, it must be sufficiently packaged in a well-insulated and sturdy container.

    c) If the container is carried onboard the flight, it counts toward the passenger's carry-on allowance and it must meet carry-on baggage dimensions.

2) Human remains in caskets are not accepted.

E. Dry Ice (frozen carbon dioxide) – Dry ice may be carried under the following conditions:

1) A maximum of 5.5 pounds (2.5 kilograms) of dry ice per passenger is accepted in checked or carry-on baggage.

2) The cooler or package must permit the release of carbon dioxide gas. Styrofoam containers are not accepted.

F. Bicycle - Bicycles may be carried under the following conditions:

1) The handlebars must be fixed sideways, and the pedals removed or wrapped in plastic foam or similar material and the entire bicycle is encased in a hard-sided case.

2) Bicycles may only be carried as checked baggage.

3) A fee applies for each bicycle checked as baggage.

4) Bicycles are excluded from baggage liability unless packaged in a hard-sided case.

G. Special Items - The following items may exceed carry-on baggage dimensions but may be taken as a carry-on item (and count toward the carry-on bag allowance) as long as they fit in the overhead bin: fishing rods, tennis rackets, wedding attire, poster tubes and musical instruments. If any such items are comprised of more than one piece, they must be packaged together to be considered one item. The carry-on bag fee applies.

H. Codeshare Flights – The baggage policy of the airline on which a passenger originally booked the codeshare flight will apply to the entire itinerary.

**FRONTIER**

CONTRACT OF CARRIAGE                                                    Rev 73 04/16/20

## 16. Limitations of Liability

A. Consequential Damages – Unless it is specifically stated otherwise in this Contract of Carriage, or as required by any applicable law, Frontier is not liable for any indirect, special or consequential damages arising out of or resulting from transportation provided, delay in transportation, or any failure to provide transportation.

B. International Transportation – With respect to international transportation, as defined in the following referenced conventions, as applicable, Frontier's liability will be limited as specified in, as and if applicable, (i) the Convention for the Unification of Certain Rules Relating to International Carriage by Air signed at Warsaw, October 12, 1929, as amended ("Warsaw Convention"), but subject to the Agreement entered into by Frontier pursuant to 14 C.F.R. Part 203 or (ii) the Convention for the Unification of Certain Rules for International Carriage by Air, signed at Montreal, May 28, 1999 ("Montreal Convention").

## 17. Claim Limits and Procedures

A. Limitations of Liability

   1) Domestic Flights – With respect to domestic flights, i.e., those flights originating and ending within the United States without any scheduled stops outside of the United States, or international flights to which neither the Warsaw Convention or the Montreal Convention apply, Frontier's limit of liability, if any, for the loss, damage or delay in the carriage of checked baggage shall be limited to $3,500 for all bags checked under a single ticketed passenger's name. Frontier will not be liable for:

      i) the following items included in checked baggage, with or without the knowledge of Frontier:

- alcohol
- antiques
- art, paintings
- art supplies
- artifacts
- bags made from lightweight material not designed for shipping
- blueprints
- books
- business documents
- CDs
- cell phones
- Cigars, cigarettes, electronic cigarettes, vape pens
- collectibles
- computer equipment (including hardware, software and all accessories)
- dentures
- drugs prohibited by federal or state law
- DVDs
- eyeglasses
- files
- food/perishables
- fragile articles or other similar valuable items and commercial effects
- hand and power tools
- heirlooms
- irreplaceable items
- jewelry
- keys
- machinery and its parts
- manuscripts
- medication
- money
- natural fur products
- negotiable papers/ instruments
- optics
- orthodontics
- orthotics
- photographic/video/ electronic equipment and accessories
- precious metals or stones
- publications
- samples
- securities
- silverware
- sound reproduction equipment
- sunglasses
- surgical supports
- toys

**FRONTIER**

**CONTRACT OF CARRIAGE**                                             Rev 73 04/16/20

    ii)  articles strapped, taped, or tied to other pieces of baggage, which may become separated as a result of normal handling during transportation

    iii)  damage to the following items when not packed in a hard-sided case or other packing that is suitable for the item.

- Prosthetic devices
- Medical equipment
- Musical instruments
- Recreational or sporting equipment
- Baby items including car seats and strollers

    iv)  damage to handles, straps, wheels and zippers arising from normal wear and tear caused by ordinary handling of baggage.

    v)  damage arising from ordinary wear and tear, such as cuts, scratches, scuffs, stains, dents, punctures, marks, and dirt

    vi)  damage resulting from over- packing or misuse

    vii)  damage arising from liquids on or in baggage; including weather (e.g. rain, snow)

2)  International Flights/Montreal Convention – With respect to international flights to which the Montreal Convention applies, Frontier's limit of liability, if any, for the loss, damage or delay in the carriage of baggage (whether checked or carry-on) shall be limited to 1,288 Special Drawing Rights per ticketed passenger. The conversion rate, available at www.imf.org, in effect on the date of loss will be used for determining maximum liability amount.

3)  International Flights/Warsaw Convention – With respect to international flights to which the Warsaw Convention applies, Frontier's limit of liability, if any, for the loss, damage or delay of (i) checked baggage shall be limited to 17 Special Drawing Rights per pound, or actual value, whichever is less, (ii) carry-on baggage shall be limited to 332 Special Drawing Rights or actual value, whichever is less. The conversion rate, available at www.imf.org, in effect on the date of loss will be used for determining maximum liability amount. Absent evidence to the contrary, bags will be presumed to weigh 20 pounds.

4)  Frontier does not accept declarations of higher value or accept fees based on such declarations.

5)  Subject to the above specified limits of liability, Frontier will compensate a passenger whose baggage has been lost, damaged or delayed for reasonable, documented direct damages up to the specified limit of liability, provided the passenger has made reasonable effort to minimize the amount of damage and provided documentation of the loss. The compensation due for lost or damaged property will be determined by the lesser of the documented original purchase price less applicable depreciation or the cost to make repairs.

6)  Frontier's liability for wheelchairs, mobility aids, and assistive devices used by a passenger with a disability if lost or damaged by Frontier shall be up to the original purchase price of the device without regard to the above limitations of liability.

7)  Passengers who incur incidental expenses as a result of delayed baggage delivery will be reimbursed per established DOT guidelines, subject to the above limitations of liability (as applicable). Any amounts paid to the passenger for incidental expenses will be deducted from the total loss amount prior to check issuance.

**FRONTIER**

CONTRACT OF CARRIAGE                                         Rev 73 04/16/20

8) Frontier will not be liable for loss or damage to carry-on baggage unless such damage is caused by Frontier's or its agent's negligence, which does not include damage resulting from turbulence, shifting of items during flight, or ordinary handling, including placing the baggage in overhead compartments or under seats.

9) Frontier's employees and agents are not liable to passengers.

B. Time Limit to Make Claims and Procedures

1) With respect to domestic flights and those international flights to which the Montreal Convention does not apply, any claim based on damage, delay or loss of baggage must be reported to Frontier within 4 hours of the arrival of the flight on which the loss or damage is claimed to have occurred. Claims for pilferage may be made up to 24 hours after flight arrival. Any documentation required to support the claim must be submitted within 30 days from the date the requesting passenger receives the claim form packet from Frontier; Frontier will not be liable if the completed claims are not submitted, with documentation, within that time period.

2) With respect to international flights to which the Montreal Convention applies, in the case of baggage damage, the person entitled to delivery must submit in writing to Frontier as soon as possible after discovery of the damage, and at the latest in writing 7 days from receipt of checked baggage and in the case of delay or loss, complaints must be made at the latest within 21 days from the date on which the baggage has been placed at the passenger's disposal or should have been placed at his/her disposal in the case of loss. All claims must be made in writing and must be accompanied by supporting documentation. Any subsequent request for documentation from Frontier must be provided to Frontier within 21 days of the request.

## 18. Failure to Operate on Schedule or Failure to Carry

A. Liability Limited - Frontier will use reasonable efforts to transport passengers and baggage to the purchased destination, but published schedules, flight times, aircraft types, seat assignments, and similar details set forth in the ticket or Frontier's published schedules are not guaranteed and form no part of this Contract of Carriage. Frontier may substitute alternate aircraft, change schedules, delay or cancel flights, change seat assignments, and alter or omit stopping places shown on the ticket as required by its operations in Frontier's sole discretion. Frontier's obligations for failure to operate any flight, failure to operate a flight according to its schedule, or for changing the schedule or type of equipment used on any flight, with or without notice to the passenger, are set forth below.

B. Force Majeure - In the occurrence of a force majeure event, Frontier may cancel, divert, or delay any flight without liability except to provide a refund for the unused portion of the ticket.

C. Delay, Misconnection, or Cancellation - In the event (i) a passenger's flight is canceled, (ii) a passenger is denied boarding because an aircraft with lesser capacity is substituted, (iii) a passenger misses a connecting Frontier flight due to a delay or cancellation of a Frontier flight (but not flights of other carriers), (iv) a passenger is delivered to a different destination because of the omission of a scheduled stop to which the passenger held a ticket, to the extent possible, Frontier will provide transportation on its own flights at no additional charge to the passenger's original destination or equivalent destination as provided herein. Frontier will have no obligation to provide transportation on another carrier. If Frontier cannot provide the foregoing transportation, Frontier shall, if requested, provide a refund for the unused portion of the passenger's ticket in lieu of the transportation under the foregoing. The foregoing shall be the limit of Frontier's liability for the matters covered by this provision.

**FRONTIER**

**CONTRACT OF CARRIAGE**                                      Rev 73 04/16/20

D. For purposes of involuntary reroute, the following groups of cities are considered to be the same point. If Frontier is able to provide transportation to one of the specified alternative cities, Frontier has met its obligation for transport to the final destination.

- Chicago-O'Hare (ORD) /Milwaukee (MKE)
- Ft. Lauderdale (FLL) /West Palm Beach (PBI) / Miami (MIA)
- Los Angeles (LAX) /Orange County (SNA)
- Madison (MSN)/Milwaukee (MKE)
- New York La Guardia (LGA) /Trenton (TTN) /Philadelphia (PHL)
- Orange County (SNA) /San Diego (SAN)
- Orlando (MCO) /St. Augustine (UST)
- Orlando (MCO) /Tampa (TPA)
- Washington Dulles (IAD) /Washington National (DCA)

E. Schedule Change Prior to Day of Travel – When a passenger's itinerary is changed because of a modification in Frontier's schedule, arrangements will be made to:

1) Transport the passenger over its own route system to the destination; or

2) In the event Frontier determines that the schedule modification is significant, Frontier shall, if requested, provide passengers a refund of the cost of the unused portion of the ticket.

F. Extended Onboard Ground Delays – In accordance with FAA regulations, Frontier maintains and complies with a separate Contingency Plan for Lengthy Tarmac Delays. Frontier's Contingency Plan for Lengthy Tarmac Delays may be found on Frontier's website at https://az832049.vo.msecnd.net/media/1567/f9-contingency-plan-for-extended-tarmac-delays-2015.pdf. Frontier's Contingency Plan for Lengthy Tarmac Delays is subject to change without notice and is not part of this Contract of Carriage.

# 19. Denied Boarding Compensation

When a seat cannot be provided due to an inadequate number of seats for the number of passengers holding confirmed reservations (overbooking), the actions described in this section will be taken.

A. Voluntary – Passengers on a flight with an overbooking will be encouraged to voluntarily relinquish their seats in exchange for alternate travel and for compensation in the form of an Electronic Travel Certificate for future transportation within 90 days on Frontier. The request and selection of volunteers will be in a manner determined solely by Frontier.

B. Involuntary – If insufficient passengers volunteer, passengers who check in after all seats have been assigned will be denied boarding and Frontier will provide transportation on Frontier's flights to the same destination.

C. Amount of Compensation – Frontier will compensate a passenger for involuntary-denied boarding based on the new arrival time after the originally scheduled arrival time as follows:

| Domestic | International | Compensation |
|---|---|---|
| New arrival time within :59 | New arrival time within :59 | No Compensation |
| New arrival time within 1 - 1:59 | New arrival time within 1 - 3:59 | 200% (2x) of the one-way fare, not to exceed $675 |
| New arrival time 2 hours or more | New arrival time 4 hours or more | 400% (4x) of the one-way fare, not to exceed $1350 |

**CONTRACT OF CARRIAGE**                                                    Rev 73 04/16/20

---

> NOTE 1:   *Frontier will not provide compensation for denied boarding when an aircraft of lesser capacity is substituted due to operational or safety reasons.*

> NOTE 2:   *No compensation will be due if boarding is denied for reasons other than overbooking, e.g., pursuant to applicable law or other provisions of this Contract of Carriage.*

D. Onward Transportation for Passengers Denied Boarding

   1) A passenger denied boarding, voluntarily or involuntarily, pursuant to this section, will be transported on Frontier's next available flight on which space is available and at no additional charge.

   2) If a passenger who has been denied boarding, voluntarily or involuntarily, pursuant to this section, wishes to modify the travel date, if space is available, a ticket will be provided for travel within 72 hours at no additional charge.

E. Electronic Travel Certificates - Frontier may offer passengers denied boarding involuntarily an Electronic Travel Voucher good for transportation on Frontier in lieu of cash compensation otherwise due under this section. Passengers may decline such offer in favor of the applicable cash compensation. The Electronic Travel Certificate has no refund value, will expire 90 days from date of issuance, is not transferable and may only be used to purchase tickets for the passenger to whom it is issued. Only one Electronic Travel Certificate may be used per ticket at the time of purchase. Electronic Travel Certificates may not be applied to ancillary fees and charges, e.g., seat fees, baggage fees, etc., applied to group travel, or combined with other offers. If a ticket purchased with an Electronic Travel Certificate costs less than the amount of the certificate, no residual value remains. Changes to a ticket purchased with an Electronic Travel Certificate may result in a change fee and any additional fare difference based on the rules of the issued ticket.

F. Time of Offer and Payment of Compensation

   1) The offer of compensation for overbooking will be made by Frontier on the day and at the place where the failure to provide confirmed space occurred. If accepted, compensation will be given to the passenger. If the alternative transportation arranged for the passenger's convenience departs before the payment can be made, payment will be made by mail or other means within 24 hours after the denied boarding occurs.

   2) Acceptance of any Denied Boarding Compensation constitutes full compensation for damages incurred by the passenger as a result of Frontier's failure to provide the passenger with a confirmed seat.

## 20. Refunds; No-Show Cancellations and Service Charges

---

A. The provisions of this Section (20.A) shall apply with respect to refunds for tickets under this Contract of Carriage:

   1) All refunds will be subject to government laws, rules, regulations, or orders of the country in which the ticket was originally purchased and of the country in which the refund is being made.

   2) The first portion of any amount refunded will be the full amount of taxes and fees imposed on the ticket purchase.

   3) If applicable, cancellation fees or service charges will be assessed in a separate transaction and netted against the refunded amount.

   4) No Use - If no portion of the ticket has been used, the refund amount will be equal to the fare, plus any ancillary purchases (checked or carry-on bag, seat assignments, etc.) and all charges, taxes and fees paid for the ticket issued to the passenger.

   5) Partial use - If a portion of the ticket has been used:

---

**FRONTIER**

**CONTRACT OF CARRIAGE**                                                    Rev 73 04/16/20

a)  One-way ticket: If travel was terminated at an intermediate or stopover point, the refund amount will be equal to the amount of the fare and all ancillary purchases (checked or carry-on bag, seat assignments, etc.) paid from the point of termination to the destination or to the point at which transportation is to resume and will be the lowest one-way fare for the class of service paid for minus any discount, plus all charges, taxes and fees proportionately attributable, which shall be reasonably determined by Frontier.

b)  Round-trip ticket purchased: the refund amount will be equal to the amount of the fare and ancillary purchases (checked or carry-on bag, seat assignments, etc.) paid on the unused portion of the ticket, plus all charges, taxes and fees proportionately attributable, which shall be reasonably determined by Frontier.

B.  In addition to the provisions of Section 20.A, in situations other than No-Show Cancellations, the provisions of this Section (20.B) shall apply with respect to refunds for tickets under this Contract of Carriage:

1)  For refundable tickets that are canceled prior to flight departure, passengers should fill out an online request, available at   www.FlyFrontier.com.

2)  For tickets that are canceled up to 24 hours after the time of purchase (excluding tickets purchased within seven days before travel, which will be held as a credit, subject to a cancellation fee), passengers should cancel their tickets online at www.FlyFrontier.com.

3)  Payment - A refund will be provided only to the original purchaser's form of payment. However, if, at the time of the application for refund, evidence is submitted that a company purchased the ticket on behalf of its employee or a travel agency has made a refund to its client, the refund will be made directly to the employee's company or the travel agency. The Table below illustrates other rules respecting payment:

| Payment Type | Refunded To |
|---|---|
| Universal Air Travel Plan | The subscriber against whose account the ticket was charged |
| Transportation Request issued by a government agency other than a U.S. government agency | The government agency that issued the transportation request |
| U.S. Government Transportation Request | The U.S. government agency that issued the U.S. Government Transportation Request with a check payable to the "Treasurer of the United States" |
| Credit Card | The account of the person to whom the credit card was issued |
| Travel Voucher | The original voucher will be reinstated if the cancellation is within 90 days of the voucher issue date |

4)  Identity - Frontier does not assume responsibility to confirm that the person using or presenting a ticket for refund is the true owner of the ticket.

C.  In situations involving a No-Show Cancellation, in addition to the provisions of Section 20.A, the provisions of this Section (20.C) shall apply with respect to refunds for tickets under this Contract of Carriage.

1)  Automatic Refund; No Additional Submission Required – In the case of a No-Show Cancellation, the refund described in Section 20.A shall be automatically refunded to the purchaser.

2)  Automatic Imposition of a No-Show Cancellation Service Charge.

**_FRONTIER_**

**CONTRACT OF CARRIAGE**                                                    Rev 73 04/16/20

    a) Refund – The refund described in Section 20.A shall be given, but will be netted against the No-Show Cancellation Service Charge in a separate transaction.

    b) Imposition of a No-Show Cancellation Service Charge – A No-Show Cancellation Service Charge will apply with respect to the ticket (or the segment for which the No-Show Cancellation applies) in the amount of the fare plus all ancillary purchases plus all charges, taxes and fees attributable to the fare and ancillary purchases.

    c) The payment of the No-Show Cancellation Service Charge shall not entitle the purchaser (and, if different, the passenger or other party to whom a refund would otherwise be due) to transportation.

D. To the extent required by applicable law, including Code § 6415(a) and the regulations promulgated thereunder, the purchaser (and, if different, the passenger or other party to whom a refund would otherwise be due) hereby consents to Frontier recovering any allowance of a credit or refund of any overpayment of governmental fees or tax imposed, including pursuant to Code § 4261, including in each case which overpayment arises directly or indirectly as a result of a No-Show Cancellation as contemplated in this Contract of Carriage.

## 21. Currency and Mode of Payment and Fees

A. Fares, fees, charges, and taxes charged or collected by Frontier are due in United States dollars, except for bookings made through available Canadian online travel sites, which are due in Canadian dollars. Any purchases made in connection with such bookings would also be due in Canadian dollars.

B. All amounts due to Frontier must be paid with a credit card. Frontier does not accept cash for any transactions, including those on Frontier's aircraft.

C. Frontier does not accept personal checks, traveler's checks, certified (cashier's) checks, or money orders.

D. A service charge will apply to any improper chargeback on a credit card and may be charged to the same credit card via which the chargeback is made.

## 22. Miscellaneous

A. Subordination to Law - In all cases, this Contract of Carriage will be subordinate to any applicable law.

B. Metric References - Conversion of British units to metric units are approximate and for reference only. The British unit will apply.

C. Change Without Notice - Except as may be required by applicable laws, government regulations, orders, and requirements, Frontier reserves the right to amend this Contract of Carriage without notice, provided that no such change shall apply to carriage that has commenced.

D. No Waiver/Modification of Terms - No employee or agent of Frontier has the authority to waive, modify, or alter any provisions of the Contract of Carriage unless authorized by a corporate officer of Frontier. Accommodations provided beyond what is required by the Contract of Carriage do not alter the Contract of Carriage. Frontier's employees and agents, including third party travel agents and online travel sites, are only authorized to sell tickets for air transportation on Frontier subject to the Contract of Carriage.

E. Changes in Rules, Fares, and Charges - Unless otherwise provided within specific fare rules, transportation is subject to the rules, fares and charges in effect on the date a ticket is issued, determined by the validation stamped or imprinted on the ticket, or valid electronic ticket.

# FRONTIER

**CONTRACT OF CARRIAGE** Rev 73 04/16/20

F. Taxes and Charges - When the ticket is issued for the effective date, all government, airport, vendor, or other charges that apply to passenger travel into foreign countries are the responsibility of the passenger to whom the ticket was originally issued and are in addition to the published fare and charges.

G. Fares/Charges - Specific fares and charges information is available through Frontier reservations offices and at www.FlyFrontier.com.

H. No Class Action - Any case brought pursuant to this Contract of Carriage, Frontier's Tarmac Delay Plan, or Frontier's Customer Service Plan may be brought in a party's individual capacity and not as a plaintiff or class member in any purported class or representative proceeding.

I. Time Limit for Action - No legal action may be brought by a passenger against Frontier unless commenced within 6 months from the date of the alleged incident.

J. Choice of Law - This Contract of Carriage will be governed by and construed in accordance with the laws of the United States of America and the State of Colorado without regard to conflict of law principles or law. All right to trial by jury in any action, proceeding or counterclaim arising out of or in connection with this Contract of Carriage is irrevocably waived.

K. Codeshare Flights – Except for baggage policies (see section 12. , section 13. , and section 15. ), the policies, rules, and procedures of the operating airline will apply on any codeshare flight.

# FRONTIER

**REVISION FILING
INSTRUCTIONS / HIGHLIGHTS**

## Contract of Carriage

REVISION NUMBER:  __73__

REVISION DATE:  __04/16/20__

«FirstName» «LastName»
«Dist_Loc»

**Instructions for paper manuals:**          **For an online version of Contract of Carriage, click here.**
1. Insert the attached revision as instructed below.
   o   Pages to be removed are listed in the left-hand column. A horizontal line in this column means no pages are to be removed.
   o   Pages to be inserted are listed in the middle column. A horizontal line in this column means no pages are to be inserted.
   o   A description of the revision is found in the right-hand column.
2. Fill in the Revision Date, Date Posted, and Posted By fields on the **Record of Revisions** page.
3. Direct questions regarding this revision to: **Tech Pubs at 720-374-4341.**

| REMOVE PAGES | INSERT PAGES | REVISION HIGHLIGHTS | Page 1 of 1 |
|---|---|---|---|
| | | <u>Changes made per PCR 20-201</u> | |
| 00.00 Pg. 3 | 00.00 Pg. 3 | **List of Effective Pages –** Updated | |
| Pgs. 1-24 | Pgs. 1-24 | **Updated:**<br>Table of Contents<br>17. Claim Limits and Procedures<br>18. Failure to Operate on Schedule or Failure to Carry | |

TRAVEL ALERT

**We are committed to your health and safety. Learn more here.**

Legal / **Customer Service Plan**

# CUSTOMER SERVICE PLAN

## 1. OFFER THE LOWEST AVAILABLE FARE

Our lowest fares are available on our website, FlyFrontier.com. Certain fares such as internet promotions, may not be available to our reservations agents and are only available at FlyFrontier.com.

## 2. COMMUNICATE DELAYS AND FLIGHT DISRUPTIONS

We know it's important to keep customers informed and we'll make every reasonable effort to ensure we provide accurate, up-to-date flight information. We will update customers about delays, cancellations and diversions.

We recommend you add your email address and phone number to your reservation, either when you book at FlyFrontier.com or afterwards by updating your *Manage my Booking* page through logging My Trips.

## 3. DELIVER BAGS ON-TIME

When you arrive at your destination, we always try to ensure your checked baggage is there too. If your baggage does not arrive on your flight, please go to our Baggage Service Office, located in the baggage claim area or to our ticket counter, to report your delayed bag. If your bag does not arrive, we require that you report this to us within 12 hours of your arrival. The customer service agent will create a tracing file and will provide an update regarding the status of your baggage.

We will get you on your way as quickly as possible and cover your immediate, reasonable needs while you wait for your baggage. We'll make every reasonable effort

# EXHIBIT B

4/20/2020                Customer Service Plan | Frontier Airlines

Case: 2:20-cv-00165-DLB-CJS   Doc #: 5-6   Filed: 11/25/20   Page: 46 of 50 - Page ID#:
Case 2:20-at-00895 Document 1-22   Filed 04/21/20   Page 3 of 7

to find your baggage and get it back to you.

We encourage you to place your contact information both on the inside and outside of all checked and carry-on baggage. We will attempt to contact any person named on a bag when we find an unclaimed, checked bag that contains a name and address or a telephone number.

*RECOMMENDATION: Items of necessity such as medication, keys, passports and anything of significant value (such as electronic devices, computers, cameras and jewelry) should be packed in your carry-on baggage.*

## 4. ALLOW RESERVATIONS TO BE HELD OR CANCELLED WITHOUT PAYMENT

Frontier does not allow reservations to be held without payment.

Refunds are provided for reservations made seven days (168 hours) or more prior to your scheduled departure, provided the refund is requested within 24 hours of your initial reservation.

## 5. PROVIDE PROMPT TICKET REFUNDS

Once the proper documentation is provided, we will process refunds for eligible domestic and international tickets within seven (7) business days of receiving the completed refund request. Due to billing cycles, a credit card statement may not reflect a refund immediately.

If you purchased the WORKS℠, you may cancel your ticket on your *Manage my Booking* page through logging into My Trips. After cancelling, you may complete and submit the Online Refund Form if you would like a refund to your original form of payment.

## 6. PROPERLY ACCOMMODATE CUSTOMERS WITH DISABILITIES AND OTHER SPECIAL NEEDS

We are dedicated to meeting the travel needs of each of our customers, including those with disabilities and other special needs. We'll provide point of contact information for travelers with special needs at our ticket counters, gates, when calling our Reservations Department at 801-401-9000, or by filling out an Online Form.

Find detailed information to help passengers with special needs plan for their travel on our Special Service page.

## 7. MEET CUSTOMERS' ESSENTIAL NEEDS DURING LENGTHY ON-BOARD DELAYS

Case: 2:20-cv-00165-DLB-CJS    Doc #: 1-6 Filed: 11/25/20 Page: 47 of 50 - Page ID#: Case 2:20-at-03395 Document 1-32 Filed 04/21/20 Page 4 of 7

Sometimes a flight may be delayed when the ground crew waits to receive takeoff clearance from Air Traffic Control, after landing at your destination or during a diversion to another airport. These delays, known as "tarmac delays," are rarely of extended duration. If, however, your flight experiences an extended tarmac delay after you have boarded or after the plane has landed, we commit to providing timely information on the situation. We will also provide for your essential needs including, as safety and security conditions allow, food, water, operable restroom facilities, and, access to medical treatment. Please see our <u>Extended Tarmac Delay Contingency Plan</u> for more details.

# 8. TREAT CUSTOMERS ON "OVERBOOKED" FLIGHTS FAIRLY

In the event that a flight is overbooked, we will solicit volunteers to give up their seats. As thanks for the cooperation of these volunteers, we provide alternative travel accommodations and an electronic voucher usable toward future transportation on a Frontier flight. It is our goal to find enough volunteers so that no customers are denied boarding involuntarily.

If there are not enough volunteers, other passengers who check in after all seats have been assigned may be denied boarding involuntarily. If you are involuntarily denied boarding, we will give you a written statement that describes your rights and explains how we determine boarding priority for an oversold flight. If there are fewer seats available than people who have checked in, generally, the last customer to check-in would be subject to removal.

In order to minimize the likelihood of getting denied boarding involuntarily, it is important that you check-in as early as possible. You can Check-In up to 24 hours in advance of your scheduled flight at FlyFrontier.com.

# 9. DISCLOSE TRAVEL ITINERARY, CANCELLATION POLICIES, MILEAGE PROGRAM RULES AND AIRCRAFT CONFIGURATION AND LAVATORY AVAILABILITY

We'll gladly provide you with detailed information about our policies, products, aircraft configurations and services.

This information is available on our website at the following links:

- *FRONTIER Miles®* frequent flyer <u>terms and conditions</u>
- <u>Cancellation Policies</u> and other policies that apply to your ticket
- <u>Aircraft configuration</u>, including seat width, pitch ranges and lavatory availability.
- All Travel on Frontier is subject to the terms of our <u>Contract of Carriage</u>.

Case: 2:20-cv-00165-DLB-CJS   Doc #: 3-3 Filed: 11/29/20   Page: 48 of 50 - Page ID#: 219

# 10. PROVIDE NOTIFICATION CHANGES TO YOUR TRAVEL ITINERARY

In the event a schedule change impacts your upcoming travel itinerary, we will send you an email to notify you of the change if we have your email address. If you purchased your ticket though a travel agency, including an online travel agency, we will notify the agency of the itinerary change so they can contact you about the change.

# 11. BE RESPONSIVE TO CUSTOMER FEEDBACK AND CONCERNS

We value feedback from our customers to help us learn what we're doing well, as well as where we can improve. Our Customer Relations Department handles all of your feedback and ensures the information is circulated to the appropriate departments within Frontier.

You may contact us in three ways with your compliments, complaints or questions.

1. Via our online <u>Feedback Form</u>.
2. In writing, you may send written correspondence to us at:

   Frontier Airlines, Inc.
   Attn: Customer Relations
   PO Box 492085
   Denver, CO 80249

   *We will acknowledge receipt of written complaints and concerns within 30 days of receiving the correspondence, and we promise to have a substantive response within 60 days of receiving the correspondence.*

3. By a phone call at <u>801-401-9000</u>. Say "other options" at the first prompt, and say "feedback and concerns" at the second prompt.

# 12. PROVIDE FOR CUSTOMERS INCONVENIENCED BY A FLIGHT DELAY, DIVERSION, CANCELLATION, OR MISCONNECTION

When it comes to flight delays and cancellations, some situations are within our control and others are not.

Here's how we describe the difference:

- **Controllable Situations** are defined as delays, diversions, cancellations or service delivery failures considered within Frontier's control (such as delayed baggage or flight delays and cancellations caused by some types of aircraft damage, mechanical issues, etc.). If your flight is delayed, cancelled, diverted, or if you miss a connecting flight due to controllable situations, we'll do our best to get you to

Case 2:20-at-00395 Document 1 Filed 04/21/20 Page 6 of 7

your destination, at no cost, on your next available Frontier flight at no additional charge. Alternatively, if your flight is cancelled we'll provide you, upon request, a full refund of any unused portion of your ticket.

- **Uncontrollable Situations** are defined as flight delays, diversions, or cancellations out of Frontier's control (such as those caused by weather, Air Traffic Control, aircraft damage caused by occurrences out of Frontier's control, such as bird strikes, etc.). We truly regret that uncontrollable situations may interrupt your travel. Given their nature, we do not offer compensation for uncontrollable events beyond the re-accommodation on the next available Frontier flight. Alternatively, if your flight is cancelled we'll provide you, upon request, a full refund of any unused portion of your ticket.

In the event of severe weather, we will enact our Severe Weather Plan and issue travel advisories on FlyFrontier.com. The Severe Weather Plan allows for re-booking of flights without additional fees for a later date when the weather improves.

**FRONTIER**

# FRONTIER

5412 7500 1234 5678

mastercard.

## TAKE TO THE AIR

**LIMITED TIME OFFER**

## Earn 50,000 bonus miles

**APPLY NOW**

## GET TO KNOW US

About Us

Careers

Newsroom

Destinations

Travel Agents

Groups

Inflight Menu

Blog

## NEED HELP?

Accessibility

Tips and FAQs

Contact Us

Optional Services

New Bag Prices

Legal

Privacy Policy

California Privacy Policy

## CONNECT WITH US

 Email Signup

 Facebook

 Twitter

 Instagram

Copyright © 2020 Frontier Airlines    |    All Rights Reserved